UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


UNITED STATES OF AMERICA

VS.                          CRIMINAL NO. 3:14-cr-00111-HTW-FKB-2

CECIL MCCRORY




ENTRY OF GUILTY PLEA


BEFORE THE HONORABLE HENRY T. WINGATE
UNITED STATES DISTRICT JUDGE
FEBRUARY 25, 2015
JACKSON, MISSISSIPPI




APPEARANCES:

FOR THE GOVERNMENT:      MR. D. MICHAEL HURST

FOR THE DEFENDANT:       MR. CLARENCE M. LELAND, JR.



REPORTED BY:  CHERIE GALLASPY BOND
              Registered Merit Reporter
              Mississippi CSR #1012

_____

501 E. Court Street, Ste. 2.500
Jackson, Mississippi  39201
(601) 608-4186

1          THE COURT:  Call your case.

2          MR. HURST:  Yes, sir, Your Honor.  Good afternoon.

3          THE COURT:  Good afternoon.

4          MR. HURST:  *United States v. Cecil McCrory*, criminal

5     number 3:14CR111.  Your Honor, we're here today for a guilty

6     plea hearing, and Mr. McCrory is represented by Don Leland.

7          THE COURT:  All right.  Will counsel and his client

8     approach the podium.  Good afternoon, Mr. McCrory.

9          MR. LELAND:  Good afternoon, Judge.

10         THE COURT:  You are with your client, Mr. McCrory?

11         MR. LELAND:  Yes, sir.

12         THE COURT:  You're Mr. McCrory?

13         THE DEFENDANT:  I am.

14         THE COURT:  Mr. McCrory, I understand you want to

15    enter a plea of guilt.  Is that correct?

16         THE DEFENDANT:  That is correct.

17         THE COURT:  And I understand, Mr. McCrory, that you

18    wish to enter a plea of guilty to Count 23 of the indictment.

19    Is that correct?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  I need to ask you some questions which

22    must be answered under oath and truthfully so now I'll have you

23    sworn.

24      (Defendant Sworn)

25         THE COURT:  Mr. McCrory, were you here during the

taking of Mr. Epps' plea?

THE DEFENDANT:  Yes, sir.

THE COURT:  So then you heard the questions I asked of him?

THE DEFENDANT:  Yes, sir.

THE COURT:  I will ask similar questions of you so I'm just put you on notice.  All right?

THE DEFENDANT:  Yes, sir.

THE COURT:  Now, is there anything about the questions that I asked him about which you have some questions?

THE DEFENDANT:  No, sir.

THE COURT:  Or some misunderstanding?

THE DEFENDANT:  No, sir.

THE COURT:  Now, I'm going go over the same questions because I have to, but I just try to inquire at this early stage whether there's something I need to go over with you in particular.  Is there?

THE DEFENDANT:  Yes, sir.

THE COURT:  So you're telling me there's nothing?

THE DEFENDANT:  No, sir, nothing.

THE COURT:  All right.  Now, you understand that you are under oath.  And so if you are caught telling a lie, then you could be prosecuted for perjury.  You understand that?

THE DEFENDANT:  I do.

THE COURT:  You know what perjury is?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  How old are you?

3          THE DEFENDANT:  63.

4          THE COURT:  How much schooling have you had?

5          THE DEFENDANT:  High school and one year of junior

6   college.

7          THE COURT:  And where did you go to high school?

8          THE DEFENDANT:  Brandon.

9          THE COURT:  All right.  And then your year of junior

10  college?

11         THE DEFENDANT:  At Hinds.

12         THE COURT:  At Hinds?

13         THE DEFENDANT:  Yeah.

14         THE COURT:  Did you complete that year?

15         THE DEFENDANT:  The one year I did, yes, sir.

16         THE COURT:  Then you can read and write?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Have you taken any drugs of any kind,

19  prescription drugs or nonprescription drugs, or consumed any

20  alcoholic beverages within the last 24 hour?

21         THE DEFENDANT:  No alcohol.  I've taken prescription

22  drugs.

23         THE COURT:  And what have you taken prescription drugs

24  for?

25         THE DEFENDANT:  Blood pressure, cholesterol.

1          THE COURT:  Is that the only drug you've taken?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  And when did you take it?

4          THE DEFENDANT:  Took cholesterol last night and blood

5  pressure this morning.

6          THE COURT:  And what effect did those drugs have on

7  you?

8          THE DEFENDANT:  None other than they maintained my

9  blood pressure.

10          THE COURT:  All right.  Do they compromise your

11  ability to understand what is happening?

12          THE DEFENDANT:  No, sir.

13          THE COURT:  Have you ever been treated by any doctor,

14  psychiatrist, or psychologist or in any hospital, clinic, or

15  mental institution for any mental disease or disorder?

16          THE DEFENDANT:  No, sir.

17          THE COURT:  In order to enter a valid plea today, you

18  must be mentally competent.  That means you able to understand

19  what is happening here today.  It also means you're able to

20  appreciate the seriousness of this hearing to your future, and

21  it also means that you're able to consult with your attorney

22  and to understand his advice to you.  So under this definition

23  of competence, are you competent right now?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Now I need to ask you whether you were

competent on the date that's charged in Count 23 of the

indictment.  Count 23 alleges that you committed the crime

that's charged therein from in or about 2007 through in or

about March 12, 2014.  That is, that you committed the crime

that's charged against you which is drawn under Title 18 United

States Code Section 1956(h).  Now, are you aware of what you're

charged with in Count 23?

THE DEFENDANT:  Yes, sir.

THE COURT:  Have you read thoroughly that particular

accusation?

THE DEFENDANT:  Yes, sir.

THE COURT:  And when is the last time you read it?

THE DEFENDANT:  Yesterday.

THE COURT:  And how many times would you say you've

read it?

THE DEFENDANT:  Two, maybe three.

THE COURT:  Okay.  Do you have any questions about

what it says?

THE DEFENDANT:  No, sir.

THE COURT:  With regard to the date you are charged

with, did you pay attention to those dates?

THE DEFENDANT:  I did.

THE COURT:  Are you saying that you do understand that

the prosecution says that you committed these crimes during

these particular dates?  My question to you concerns your

competency during these particular dates.  During these particular dates, did you know the difference between right an wrong?

THE DEFENDANT:  Yes, I did.

THE COURT:  Did you know that what is charged in Count 23, in fact, was wrong?

THE DEFENDANT:  Yes, sir.

THE COURT:  Let me turn to counsel.  Counsel, do you raise any questions concerning your client's competence?

MR. LELAND:  No, sir.

THE COURT:  What about the prosecution?  Do you raise any objections concerning Mr. McCrory's competence in any respect?

MR. HURST:  We do not, Your Honor.

THE COURT:  No one raises any objections concerning the competence of Mr. McCrory, neither the defendant himself nor his lawyer nor the prosecution.  The court has inquired and is satisfied that Mr. McCrory understands the difference between right and wrong, that on the date charged in Count 23 he was competent.  The court is further persuaded that at this time he is competent to a plea of guilty.  Now, the law requires that you be adequately and competently represented by your lawyer.  Have you had enough time to discuss you case with your lawyer?

THE DEFENDANT:  Yes, sir.

1    THE COURT:  Are you satisfied with the amount of time

2  he's spent with you?

3    THE DEFENDANT:  I am.

4    THE COURT:  Are you satisfied with his advice to you?

5    THE DEFENDANT:  Yes, sir.

6    THE COURT:  If you have any complaints about the way

7  he has handled your case, you need to tell me now.  Do you have

8  any complaints about the way he has handled your case?

9    THE DEFENDANT:  No, sir.

10    THE COURT:  Now, I will talk to you about your rights.

11  Under the constitution and laws of the United States, as a

12  criminal defendant you have certain rights.  I'm sure your

13  counsel has gone over these rights with you, but I have to be

14  sure that you understand and know these rights.  You have a

15  right to a trial by jury.  You have a right to ask for a trial

16  before the bench.

17    If you ask for a trial before the bench and if it's

18  granted, then only I will serve as the judge of the law as well

19  as the judge of the facts.  If you ask for a trial by jury,

20  then we will impanel a jury from the community randomly drawn

21  and then go through a process in which you will participate

22  through your attorney, the prosecution, and this court in

23  selecting 12 persons to serve on that jury.  Are you aware of

24  this kind of proceeding?

25    THE DEFENDANT:  Yes, sir.

1    THE COURT:  So then we will have a jury.  And as I

2 said, you will have involvement in the selection process by way

3 of your attorney.  And then once that jury is impaneled and

4 sworn, then that jury will be the ones to determine whether you

5 are guilty or not guilty under the evidence.  Do you understand

6 that?

7    THE DEFENDANT:  I do.

8    THE COURT:  Do you further understand that the number

9 of persons who will serve as your jury will be 12 persons?  Do

10 you understand that?

11    THE DEFENDANT:  I do.

12    THE COURT:  Do you understand that the vote would have

13 to be unanimous?  Do you understand that too?

14    THE DEFENDANT:  Yes, sir.

15    THE COURT:  Do you further understand that the

16 prosecution would have the burden of proof because you will be

17 presumed to be innocent?  Do you understand that?

18    THE DEFENDANT:  I do.

19    THE COURT:  Then the prosecution in order to prevail

20 on the charge against you would be required to persuade the

21 jury by proof beyond a reasonable doubt that you are guilty as

22 charged in Count 23.  Do you understand that?

23    THE DEFENDANT:  Yes, sir.

24    THE COURT:  If the prosecution does not persuade the

25 jury, then the jury should vote not guilty.  Do you understand

1  that?

2       THE DEFENDANT:  I do.

3       THE COURT:  You would have no obligation to prove

4  anything because you are the defendant and our system of

5  justice does not require you to present any evidence if you do

6  not wish to do so.  Do you understand that?

7       THE DEFENDANT:  I do.

8       THE COURT:  So then the burden would be on the

9  prosecution to prove that you were guilty of proof beyond a

10  reasonable doubt.  You'll be presumed to be innocent, and you

11  would not have to prove anything.  Do you understand that?

12       THE DEFENDANT:  Yes.

13       THE COURT:  Now, the government in seeking to prove

14  the case would have to put on some kind of evidence, and

15  evidence can be in the form of witness testimony.  It can be in

16  the form of documents received into the record as exhibits or

17  it can be in the form of stipulations or in the form of

18  instructions from the court on the matter of evidence.  But

19  however the government proceeds, it would have to produce

20  evidence, and that evidence would have to be sufficient to

21  convince the jury by proof beyond a reasonable doubt that you

22  are guilty.  Do not understand that?

23       THE DEFENDANT:  Yes, sir.

24       THE COURT:  Do you understand that the prosecution in

25  calling witnesses will have them on direct examination and then

1  your counsel can cross-examine?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Do you understand that if the prosecution

4  presents exhibits, that you have a right to object to those

5  matters and I will rule on whether they are prudent for a jury

6  to see?  Do you understand that?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  And do you understand again that the jury

9  would have to vote whether you are guilty or not guilty after

10  receiving all of the evidence and reach its decision by

11  unanimous verdict?  Do you understand that?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Now, I said that you don't have to prove

14  anything.  And on the other hand, the prosecution has to prove

15  its case against you by proof beyond a reasonable doubt.  But

16  do you understand that if you wish to produce evidence that you

17  could do so?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  That you could call witnesses, that you

20  could submit exhibits?  Do you understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  That you could have the same prerogative

23  on submitting evidence that the prosecution has?  Do you

24  understand all of that?

25          THE DEFENDANT:  I do.

1          THE COURT:  Do you understand if you elect not to

2    submit any evidence, I would advise the jury that the jury

3    couldn't hold that against you because you have a right to

4    remain silent?  Do you understand that too?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  On the other hand, if you were to submit

7    evidence or submit testimony in your behalf, I would advise the

8    jury that the jury could not disbelieve your evidence or your

9    testimony simply because you are the defendant.  Do you

10   understand that?

11         THE DEFENDANT:  Yes.

12         THE COURT:  So then with regard to your opportunity to

13   present evidence that you could call witnesses, you could

14   produce exhibits and you could testify too if you wish to do

15   so.  Do you understand that?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  And then if you testify, then you could be

18   subject to cross-examination like every other witness.  Do you

19   understand that?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  And then if you present witness, they will

22   be subject to cross-examination like every other witness.  Do

23   you understand that too?

24         THE DEFENDANT:  I do.

25         THE COURT:  And then further, with regard to this

presentation of evidence, do you understand then that you could

remain silent and not testify or you could testify and if you

do not testify, as I said before, I will advise the jury that

it couldn't use that against you.  And if you testify, I will

advise the jury it could not disbelieve your testimony just

because you're the defendant.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  During the trial, if you and your counsel

have objections to other matters submitted to the prosecution,

do you understand that you have a right to make those

objections?

THE DEFENDANT:  Yes, sir.

THE COURT:  And I will rule on those objections before

the evidence could be construed by a jury.  Do you understand

that too?

THE DEFENDANT:  Yes, sir.

THE COURT:  Any questions in that regard?

THE DEFENDANT:  No, sir.

THE COURT:  Do you further understand that if you

successfully plead guilty to this count, that there will be no

necessity for the prosecution to prove its case against you by

submitting that case to a trier of fact either to the court or

to the jury.  Do you understand that?

THE DEFENDANT:  I do.

THE COURT:  Do you understand that you'll be giving up

1    that right?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  That we'll be proceeding directly to

4    sentencing after that point?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  And you understand that you have this

7    right to have a trial either before this court or a jury if you

8    want one and no one can make that decision or that choice

9    except you?

10           THE DEFENDANT:  Yes.

11           THE COURT:  So then with regard to that choice, do you

12   still wish to enter a plea of guilty?

13           THE DEFENDANT:  I do.

14           THE COURT:  Let's talk about Count 23.  You said you

15   read Count 23.  Is that so?

16           THE DEFENDANT:  Yes.

17           THE COURT:  You also said you were here when I went

18   over these matters with Mr. Epps.  Is that correct?

19           THE DEFENDANT:  Yes, sir.

20           THE COURT:  Did you hear me talk about Count 23 at

21   that time?  Did you hear me talk about Count 23 at that time?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  Did you have a copy of Count 23 with you

24   when I was going over Count 23 with Mr. Epps?

25           THE DEFENDANT:  No, not in my hand.  It was -- my

attorney had it.

THE COURT:  Okay.  Count 23 -- do you have a copy in front of you now?

THE DEFENDANT:  Yes, sir.

THE COURT:  And you told me before you've read it so I'm confident that you have.  So let's just look at Count 23 and summarize some part of it.  And anything you want some detailed discussion on, we'll do that.  Okay?

THE DEFENDANT:  Yes, sir.

THE COURT:  Count 23 says -- look at paragraph 48. The allegations contained in paragraphs 1 through 47 of this indictment are realleged and incorporated by reference as though fully set forth herein.  Now, we're only talking about Count 23, but did you hear my conversation with Mr. Epps when I talked about relevant conduct?

THE DEFENDANT:  Yes, sir.

THE COURT:  And I explained that even though he was pleading, as you are, to Count 23, that at sentencing this court can take into account misconduct alleged in other paragraphs even though you're not pleading to them if the court finds that conduct to be bearing on the sentencing.

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand that?

THE DEFENDANT:  I do.

THE COURT:  So then I just read 48 to you.  And then

1    in 49, it's the substantive allegations against you.  It starts

2    off by giving the time period that I've discussed with you

3    before, and then it says that Christopher B. Epps and you,

4    Mr. Cecil McCrory, did knowingly combine, conspire, and agree

5    about each other and with other persons known and unknown to

6    the grand jury to commit offenses against the United States in

7    violation of Title 18 United States Code Section 1956, to wit,

8    to knowingly conduct and attempt to conduct transactions

9    affecting interstate commerce and foreign commerce which

10   transactions involve the proceeds of specified unlawful

11   activity, that is, bribery and kickbacks knowing that the

12   transactions were designed in whole or in part to conceal and

13   disguise the nature, location, source, ownership and control of

14   the proceeds of specified unlawful activity and that while

15   conducting and attempting to conduct such financial

16   transactions knew that the property involved in the financial

17   transactions represented the proceeds of some form of unlawful

18   activity in violation of Title 18 United States Code

19   Section 1956(a)(1)(B)(i).  Then it says the manner and means

20   used to accomplish the objectives of the conspiracy included,

21   among others, the following.

22        Now, did you read the manner and means before?

23        THE DEFENDANT:  Yes, sir.

24        THE COURT:  Let's go back to what it says here in

25   paragraph 49.  As I stated before, it sets out the time period.

It sets out the two persons alleged to have conspired, and then it mentions the conspiracy. So you understand that at the bottom you're charged with conspiring with Christopher B. Epps, two, committed the acts charged here in paragraph 49. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And then in paragraphs 50, 51 and 52, these paragraphs set out the manner and means of how you and Mr. Epps allegedly carried out or tried to carry out the scheme that's mentioned in paragraph 49. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Like in paragraph 50, it mentions that you wired several large bribe payments to the financial institutions that held the mortgage for defendant Epps' home in Flowood, Mississippi, with Epps later using the equity from the proceeds of that specified unlawful activity to take out a loan to purchase a condominium in Biloxi, Mississippi, thus concealing and disguising the nature and source of the proceeds from the specified unlawful activity. Did you follow along with me on that?

THE DEFENDANT: I did.

THE COURT: Paragraph 50, again under manner and means, setting out how the criminal activity in part was committed. It says that during the time period of the conspiracy, defendant McCrory gave cash bribes and kickbacks to

1  defendant Epps which Epps would put in his safe at home until

2  he was ready to deposit such cash, bribes into his various bank

3  accounts or use such cash to purchase cashier's checks later

4  structuring such deposits and purchases in order to conceal and

5  disguise the nature and source of these proceeds of this

6  specified unlawful activity.  Again did you follow along with

7  me on that?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  And then finally in paragraph 53, that

10  during this time period of the conspiracy, defendant McCrory

11  also wired a large bribe payment to defendant Epps' Edward

12  Jones investment account from which Epps was able to wire money

13  and trade in his Biloxi condominium for a larger, more

14  expensive condominium in Pass Christian, Mississippi, thus

15  continuing to conceal and disguise the nature and source of the

16  proceed of the specified unlawful activity, and all of this is

17  charged in violation of Section 1956(h) of Title 18 United

18  States Code.

19          Did you following along with me on the reading of

20  those matters?

21          THE DEFENDANT:  Yes, sir, I did.

22          THE COURT:  Any question about that?

23          THE DEFENDANT:  No, sir.

24          THE COURT:  So then we are dealing here with 18 USC

25  Section 1956(h), and again I ask when I went over these matters

1    with Mr. Epps, were you present in the courtroom?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  So you heard the discussion?

4            THE DEFENDANT:  I did.

5            THE COURT:  And did any parts of that discussion bring

6    any questions to your mind about these matters?

7            THE DEFENDANT:  No, sir.

8            THE COURT:  I still need to ask you some things about

9    it, but I just wanted to know preliminarily whether you have

10   some specific question.  If you do at any point along the way,

11   let me know.  All right?

12           THE DEFENDANT:  Yes, sir.

13           THE COURT:  This title we're talking about is Title

14   18, and the section we're talking about is Section 1956(a)(1),

15   which makes it a crime for anyone to conduct a financial

16   transaction with the proceeds of specified unlawful activity

17   knowing that the property involved represents the proceeds of

18   some form of illegal activity and knowing that the transaction

19   is designed to conceal or disguise the nature, location, source

20   ownership or control of the proceeds of specified unlawful

21   activity.

22           Now, if you had determined that you wanted a jury

23   trial or if you change your mind now about pleading guilty and

24   ask for a jury trial or for that matter even a bench trial, in

25   order for you to be convicted of this particular accusation,

1  the prosecution would have to prove each of the following

2  elements by proof beyond a reasonable doubt.  The government

3  would have to prove each of the following by proof beyond a

4  reasonable doubt:

5          First, that you knowingly conducted a financial

6  transaction.

7          Secondly, that the financial transaction involved the

8  proceeds of a specified unlawful activity, namely bribes and

9  kickbacks.

10         Thirdly, that the defendant knew that the property

11 involved in the financial transaction represented the proceeds

12 of some form of unlawful activity.

13         And, fourthly, that the defendant knew that the

14 transaction was designed in whole or in part to conceal or

15 disguise the nature, location, source, ownership, or control of

16 the proceed of the specified unlawful activity.

17         Now, did you hear the elements I just described?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  You recognize again that the prosecution

20 would have to prove each one of these elements by proof beyond

21 a reasonable doubt, do you not?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  So then the first requirement, that first

24 prerequisite, that the defendant knowingly conducted a

25 financial transaction, knowingly conducted.  That term

1    "knowingly" means that you engaged in activity purposely,

2    knowing, understanding, appreciating this activity and that you

3    were not acting out of mistake but were not acting at the

4    direction of somebody else but you were acting voluntarily.  Do

5    you understand that?

6             THE DEFENDANT:  Yes.

7             THE COURT:  Then the other part of that element, it

8    says "knowingly conducted a financial transaction."  A

9    financial action includes any transaction as that term is

10   defined herein, and the term "transaction" includes a purchase,

11   sale, pledge, gift, transfer, delivery or our disposition or

12   with respect to a financial institution a deposit, withdrawal,

13   transfer between accounts, exchange of currency, loan,

14   extension of credit, purchase or sale of any stock, bond,

15   certificate of deposit, or other monetary instrument or other

16   payment, transfer, or delivery by through or to a financial

17   institution by whatever means effected.

18             So you understand here that this term "transaction" is

19   indeed broad, is it not?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  And so what that first element says is

22   that the defendant knowingly conducted a financial transaction,

23   and so this financial transaction is one which in any way or

24   degree affects interststate or foreign commerce involving the

25   movement of funds by wire or other means, one or more monetary

1    instrument, or the transfer of title to any real property,

2    vehicle, vessel, or aircraft; or, two, which involves the use

3    of a financial institution that is engaged in or the activities

4    of which affect interstate or foreign commerce in any way or

5    degree.

6            So then with regard to that first element that says

7    that the prosecution has to prove that you knowingly conducted

8    a financial transaction, do you have any questions about what

9    that requires?

10           THE DEFENDANT:  No, sir.

11           THE COURT:  And, of course, you understand that the

12   word "conduct" includes initiating or concluding or

13   participating in initiating or concluding a transaction.  Do

14   you understand that?

15           THE DEFENDANT:  I do.

16           THE COURT:  The second element is -- says that the

17   financial transaction involved the proceed of a specified

18   unlawful activity, namely bribes and kickbacks.  So we start,

19   then, our definition here with the word "proceeds."  The term

20   proceeds means any property derived from or obtained or

21   retained directly or indirectly through some form of unlawful

22   activity, including the gross receipts of such activity.  So do

23   you understand what that term means in this context here?

24           THE DEFENDANT:  I do.

25           THE COURT:  So then the government with regard to the

1    second element would have to prove that the financial

2    transaction involved the proceed of a specified unlawful

3    activity, namely bribes and kickbacks.  So as that term is used

4    here, bribes and kickbacks, do you understand what that means?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  It is an activity which is against the law

7    where one individual provides some service or property in

8    response to some sort of illegal -- illegal initiative.  Do you

9    understand that?

10           THE DEFENDANT:  Yes, sir.

11           THE COURT:  The third element is that the defendant

12   knew that the property involved in the financial transaction

13   represented the proceeds of some form of unlawful transaction

14   or lawful activity.  Do you understand what that means again?

15           THE DEFENDANT:  I do.

16           THE COURT:  And I need to emphasize the word "knew,"

17   that the defendant knew, not that the defendant supposed or

18   guessed but that the defendant knew, had knowledge.  Do you

19   understand?  Was aware.  Do you understand that?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  The fourth element is that the defendant

22   knew that the transaction was designed in whole or in part to

23   conceal or disguise the nature, location, source, ownership, or

24   control of the proceeds of the specified unlawful activity.

25           With respect to the second element, that is, that the

financial transaction involved the proceeds of a specified

unlawful activity, namely bribes and kickbacks.  The government

must show that in fact the property was the proceeds of bribes

and kickbacks which are specified unlawful activities under the

statute.  Do you understand that?

THE DEFENDANT:  I do.

THE COURT:  With respect to the third element, the

government must prove that you knew that the property involved

in the transaction was the proceeds of some kind of crime, that

is, a felony any under federal, state, or foreign law, although

the government need not show that you knew exactly what crime

generated the funds.  Bribery is a felony.  Do you understand

that?

THE DEFENDANT:  I do.

THE COURT:  This alleges a conspiracy, and a

conspiracy is an agreement by two or more persons.  Here you

are charged along with Mr. Epps to commit an unlawful act.  In

other words, it is a kind of partnership for criminal purposes.

Every member of the conspiracy becomes the agent or partner of

every other member.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  So do you understand that acts taken by a

member of the conspiracy in furtherance of a conspiracy are

imputed to the other coconspirator?

THE DEFENDANT:  Yes, sir.

1          THE COURT:  Do you understand that?

2          THE DEFENDANT:  I do.

3          THE COURT:  The government does not have to prove that

4    all of the people named in the indictment were members of the

5    plan or that these who were members made any kind of formal

6    agreement.  Now, I will emphasize that second part, that the

7    government need not prove that they made any kind of formal

8    agreement.  In your case here, the government contends that you

9    and Mr. Epps conspired, that you were two persons that

10   comprised the conspiracy.  Do you understand that?

11         THE DEFENDANT:  I do.

12         THE COURT:  And do you understand that the government

13   need not prove that you entered into any formal agreement or

14   that you had some agreement that was put on paper or anything

15   like that.  Do you understand that?

16         THE DEFENDANT:  I do.

17         THE COURT:  The heart of the conspiracy is the making

18   of the unlawful plan itself.  So the government does not have

19   to prove that the conspirators succeeded in the carrying out

20   the plan.  But here the government is saying that you did, but

21   the government did you not have to prove that.  Do you

22   understand that?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  A defendant can be found guilty of this

25   crime only if all of the following facts are proved beyond a

reasonable doubt:  That two or more persons agreed to try to accomplish a common and unlawful plan to violate 18 USC Section 1956 and that the defendant -- that is you -- knew about the plan's unlawful purpose and willfully joined in it. Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  By willfully join in it, the court deems that you joined in the conspiracy that is with the intent to further the conspiracy's purpose.  Do you understand that?

THE DEFENDANT:  I do.

THE COURT:  A person may be a conspirator without knowing -- without knowing all the details of the unlawful plan or names and identities of all the other alleged conspirators. If the defendant played only a minor part in the plan but had a general understanding of the unlawful purpose of the plan and willfully joined in the plan on at least one occasion, that's sufficient for a jury to find a defendant guilty if so proved by proof beyond a reasonable doubt.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Simply being present at the scene of an event or merely associating with certain people and discussing common aims and interests doesn't establish proof of a conspiracy.  Also a person who does not know about a conspiracy but who happens to act in a way that advances some purpose of the conspiracy does not automatically become a conspirator or a

1    coconspirator under the law.  Do you understand that?

2                   THE DEFENDANT:  Yes, sir.

3                   THE COURT:  Is there anything about the elements of

4    the law that the prosecution would have to prove on Count 23?

5                   THE DEFENDANT:  No, sir.

6                   THE COURT:  Now, are you aware of what the maximum

7    penalty is for a violation of Count 23?

8                   THE DEFENDANT:  Yes, sir.

9                   THE COURT:  Have you been told that it's not more than

10   20 years imprisonment and a fine of $500,000 or twice the value

11   of the property involved in the transaction?

12                  THE DEFENDANT:  Yes, sir.

13                  THE COURT:  Have you been advised that this violation,

14   if it should come to sentencing, could have a cap of supervised

15   release of not more than three years?

16                  THE DEFENDANT:  Yes, sir.

17                  THE COURT:  Do you know what supervised release is?

18                  THE DEFENDANT:  I do, yes, sir.

19                  THE COURT:  Did you hear me discuss that with

20   Mr. Epps?

21                  THE DEFENDANT:  I did.

22                  THE COURT:  Do you have any questions about supervised

23   release?

24                  THE DEFENDANT:  No, sir.

25                  THE COURT:  And then do you understand you have to pay

1  the special assessment fee?  Do you understand that?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  And further I understand -- well, I had

4  better turn to the prosecution.  Is there an agreement on the

5  forfeiture?

6          MR. HURST:  There is, Your Honor.

7          THE COURT:  Okay.  Thank you.  Do you understand that

8  the court could order you to make forfeiture, but I understand

9  that you all have an agreement on such.  Is that correct?

10          THE DEFENDANT:  That's correct.

11          THE COURT:  And then you have to pay the special

12  assessment fee of $100.  Do you know that?

13          THE DEFENDANT:  Yes, sir.  I've already paid that.

14          THE COURT:  You've already paid that.  All right.  Is

15  there anything about what I've gone over that generates any

16  question in your mind that you wish to discussion?

17          THE DEFENDANT:  No, sir, no.

18          THE COURT:  We still have a ways to go.  So if you

19  have any question make sure you ask.  All right?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Now, are you offering your plea

22  voluntarily?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Has anybody forced you today to plead

25  guilty?

1       THE DEFENDANT:  No, sir.

2       THE COURT:  Is there a plea agreement?

3       MR. HURST:  Yes, Your Honor.  There's a plea agreement

4   and plea supplement.

5       THE COURT:  All right.  Go over that for us.

6       MR. HURST:  Yes, Your Honor.  The defendant has agreed

7   to plead guilty to Count 23 to the indictment filed in this

8   case charging him with money laundering conspiracy in violation

9   of Section 1956(h), Title 18 United States Code.  The defendant

10  has also agreed to make full restitution of all victims, to

11  fully perform under the forfeiture paragraph of the plea

12  supplement and to neither run for elected public offer nor

13  apply for or be employed by any governmental institution

14  future.

15      Your Honor, contained within the plea agreement are a

16  number waivers, which I will highlight now.  As part of that

17  plea agreement, the defendant has agreed to waive the following

18  rights, one, the right to appeal the conviction and sentence or

19  the manner in which the sentence was imposed on any ground

20  whatsoever, the right to contest the conviction and sentence or

21  the manner in which the sentence was imposed in any

22  postconviction proceeding, including but not limited to a

23  motion under 28 United States Code Section 2255, and any type

24  of proceeding claiming double jeopardy or excessive penalty as

25  a result of any forfeiture in this case.

He also is waiving any rights to seek attorneys fees and/or costs and any and all rights, whether asserted directly or by a representative, to request or receive records about this case under the Freedom of Information Act or the Privacy Act.

Your Honor, at this time, the government would request that the court have the defendant personally confirm that he understands and agrees to the terms of the plea agreement, including specifically the waivers as outlined by the government, and we ask that the plea supplement be sealed pursuant to local rules and both be made a part of the record.

THE COURT:  All right.  Thank you.  Let's talk about the plea agreement itself.  Mr. McCrory, did you enter into a plea agreement with the government?

THE DEFENDANT:  Yes, sir.

THE COURT:  And do you understand that if this agreement contains some promise by the government to make a recommendation at sentencing to me, that I would not be bound at sentencing by that recommendation?

THE DEFENDANT:  I understand that.

THE COURT:  And do you understand that I could sentence you up to the maximum as required by law?

THE DEFENDANT:  Yes, sir.

THE COURT:  Or as authorized by law?

THE DEFENDANT:  Yes, sir.

1        THE COURT:  Do you understand that?

2        THE DEFENDANT:  Yes, sir.

3        THE COURT:  So do you understand then that with regard

4 to the sentence that this court could impose, it is totally

5 within this court's discretion?

6        THE DEFENDANT:  I understand that.

7        THE COURT:  And the court could sentence you to the

8 highest part of the statute or the guidelines or both.  Do you

9 understand that?

10        THE DEFENDANT:  I understand it.

11        THE COURT:  And with regard to this sentencing matter,

12 do you understand that at this juncture even though the

13 prosecution may have shared with you its thoughts about what

14 you might face with regard to the sentencing guidelines, and

15 your counsel may have also joined in that prediction as to what

16 the guidelines might be, do you understand that I and I alone

17 will be the one to determine what the guidelines are?

18        THE DEFENDANT:  Yes, sir.

19        THE COURT:  And do you further understand that in

20 making that determination that I'm not bound by anybody else's

21 calculations?  Do you understand that?

22        THE DEFENDANT:  Yes, sir, I understand.

23        THE COURT:  Do you further understand that while the

24 prosecution may be recommending that you be sentenced under the

25 guidelines, that the court has the option to sentence you under

1    the statute if the court so desires?  Do you understand that?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  And do you understand that there would be

4    a difference under the guidelines as opposed to what the

5    statute prescribes, that generally the statute prescribes a

6    potential sentence higher than what's calculated in the

7    guidelines?  It is not always the case, but do you understand

8    that if that is the case here that -- and the statute

9    prescribes higher penalty than the guidelines, that it is up to

10   me to determine whether to sentence you under the guidelines or

11   under the statute?  Do you understand that?

12             THE DEFENDANT:  I do.

13             THE COURT:  Any question about that at all?

14             THE DEFENDANT:  No, sir.

15             THE COURT:  Do you understand that ordinarily a

16   defendant has a right to appeal a sentence and conviction to

17   the next higher court?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Do you understand that you are giving up

20   that right?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  When I sentence you, do you understand

23   that you cannot appeal to the next court indicating that you

24   think the sentence is too high or too low or inappropriate or

25   whatever?

1        THE DEFENDANT:  Yes, sir.

2        THE COURT:  Do you understand that?

3        THE DEFENDANT:  I do.

4        THE COURT:  Do you further understand that under the

5   Freedom of Information Act that you would not be able to obtain

6   information concerning what was in the government's file,

7   investigation file, or during the course of this prosecution

8   but that you cannot ever gain access to such information?  Do

9   you understand that?

10       THE DEFENDANT:  Yes, sir.

11       THE COURT:  Do you further understand that you can't

12   institute some proceeding seeking to get some sort of fees like

13   attorney fees or anything else from the government as a result

14   of this prosecution?

15       THE DEFENDANT:  I do.

16       THE COURT:  Did you sign this plea agreement?

17       THE DEFENDANT:  Yes, sir.

18       THE COURT:  And when did you sign it?

19       THE DEFENDANT:  This morning.

20       THE COURT:  All right.  And when is the first time you

21   saw it?

22       THE DEFENDANT:  This morning.

23       THE COURT:  And that's the first time you read over

24   it?

25       MR. LELAND:  Judge, this was a revised agreement.  It

is actually dated February 12th.  That's the first time that we went over it.  There have been many iterations between February 12th and now.

THE DEFENDANT:  We went over this one this morning too.

THE COURT:  Did you have adequate time to go over it?

THE DEFENDANT:  Yes, sir.

THE COURT:  And, Counsel, do you agree with that, that you had adequate time to go over it?

MR. LELAND:  Yes, sir.

THE COURT:  I seem to get -- I seem to get the impression that you've gone over the basics but that you had to fine-tune this agreement.

MR. LELAND:  We have, Your Honor.

THE COURT:  Is that what you all did today?

MR. LELAND:  We did, Your Honor.  It was -- the plea agreement changed.  Also the forfeiture agreement has changed and it was actually the forfeiture agreement that had the most changes to it and that was the one we didn't receive until yesterday.  And because of a computer glitch at my office, we couldn't get it up until this morning.  So that's the reason we went over it this morning.

THE COURT:  All right.  And did you have adequate time to go over that agreement with your client?

MR. LELAND:  Yes, sir, we did.

1          THE COURT:  And did you answer whatever questions he
2     had?
3          MR. LELAND:  Yes, sir.
4          THE COURT:  Then I turn to Mr. McCrory.  Did you have
5     adequate time to go over that agreement with your counsel?
6          THE DEFENDANT:  Yes, sir.
7          THE COURT:  Are you satisfied at the answers he
8     provided to you about this matter?
9          THE DEFENDANT:  Yes, I am.
10         THE COURT:  Do you have any lingering question that
11    you wish to ask?
12         THE DEFENDANT:  No, sir.
13         THE COURT:  Or lingering questions that plague you
14    concerning this matter?
15         THE DEFENDANT:  No, sir.
16         THE COURT:  So did you read each every paragraph of
17    this agreement?
18         THE DEFENDANT:  Yes, sir.
19         THE COURT:  Is there anything in this agreement you'd
20    like for me to go over?
21         THE DEFENDANT:  No, sir.
22         THE COURT:  Now, the second document is the plea
23    supplement.  That document is going to be placed under seal.
24    Now, did you read this document?
25         THE DEFENDANT:  Yes, sir.

1          THE COURT:  Did you go over it and discuss it

2     thoroughly with your counsel?

3          THE DEFENDANT:  I did.

4          THE COURT:  Do you have any questions at all about

5     anything in that document?

6          THE DEFENDANT:  No, sir.

7          THE COURT:  When did you sign that document?

8          THE DEFENDANT:  This morning.

9          THE COURT:  Did you have enough time to spend with

10    that document?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  Did you have enough time to spend with

13    your lawyer?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  And I ask you again, any kind of questions

16    you have there?

17         THE DEFENDANT:  I don't have any.

18         THE COURT:  At the end of both documents are some

19    declarations.  Would you look at those declarations at the end

20    of those documents?  Do you see those declarations there?

21         THE DEFENDANT:  Yes, sir.  We went over all of those

22    this morning.

23         THE COURT:  Did you?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Do you have any questions about them?

1          THE DEFENDANT:  No, sir.

2          THE COURT:  Now, they are identical at the end of both

3   documents.  Do you agree with me on that?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  With regard to those declarations, do you

6   agree with them?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Now, you told me you signed this

9   document -- both documents today.

10         THE DEFENDANT:  Yes.

11         THE COURT:  So those documents bear your signature?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  They bear today's date?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  Counsel, when did you sign the document?

16         MR. LELAND:  This morning.

17         THE COURT:  All right.  And to the prosecution:  When

18  did you sign it?

19         MR. HURST:  Today, Your Honor.

20         THE COURT:  Please pass the documents over.

21  Mr. McCrory, just as with Mr. Epps, I wish to comment a little

22  further on two of the provisions here.  One that you cannot

23  appeal, that is, ordinarily a defendant has the right to appeal

24  to the next higher court what the defendant might feel to be an

25  unjust, inadequate, or imprudent sentence.  And do you

understand that you are giving up this right by this document you've signed?

THE DEFENDANT:  I do.

THE COURT:  Then next, do you understand that you have also agreed with the prosecution in this document that you would not ever seek public office?

THE DEFENDANT:  Yes, I understand.

THE COURT:  And also that you would not seek employment by any governmental entity?

THE DEFENDANT:  I understand.

THE COURT:  Is it your understanding that that prescription or proscription is broad and concerns any state or federal government office?

THE DEFENDANT:  Yes, sir.

THE COURT:  Now, Mr. McCrory, how would you describe your occupation?

THE DEFENDANT:  My occupation?  Retired.

THE COURT:  You're retired now?

THE DEFENDANT:  Yes.

THE COURT:  How long?

THE DEFENDANT:  Since September of last year.

THE COURT:  Mr. McCrory, did you intend to reenter the work force?

THE DEFENDANT:  No, sir.

THE COURT:  So that was your decision then to retire?

```
1              THE DEFENDANT:  Yes, sir.

2              THE COURT:  All right.  I ask you that question,

3    Mr. McCrory, to see how that provision here might affect your

4    future plans in becoming gainfully employed.  So that's why I

5    asked the question to see then whether you fully understood the

6    implications of what's here.

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  You understand that then?

9              THE DEFENDANT:  I do understand, yes, sir.

10             THE COURT:  Okay.  One other matter.  Did you hear me

11   discuss with Mr. Epps this whole matter of relevant conduct?

12             THE DEFENDANT:  Yes, sir, I did.

13             THE COURT:  What I said and will repeat to you is

14   this:  That you are pleading guilty to one count that concerns

15   you.  But even though you're only pleading guilty to one count,

16   that at sentencing the court if it finds it appropriate can

17   consider misconduct that might emanate from other counts in the

18   indictment.  Do you understand that?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  That's been explained to you by your

21   counsel?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  Now, with regard to the plea agreement,

24   the plea agreement is numbered at the bottom.  It's between the

25   United States and Mr. Cecil McCrory, criminal number
```

1    3:14CR111HTW-FKB.  It is dated February 12, 2015, on the front

2    page.  It's numbered at the bottom page 1 of 5.  The second

3    page is numbered page 2 of 5.  The third page similarly, 3 of 5

4    and then 4 of 5, with the tenth paragraph falling on page 4

5    midway the page and the rest of that page being blank after the

6    tenth paragraph.  Then on page 5 of 5 at the top is paragraph

7    11 styled complete agreement, and thereafter are the

8    declarations I mentioned earlier.

9         And then the signature of the parties are found after

10    that, that of D. Michael Hurst, Jr., Assistant United States

11    Attorney, that of Mr. Cecil McCrory defendant and that of

12    Mr. Don Leland, attorney for defendant.  All are signed on

13    2/25/15.  So I'll make this plea agreement a part of the

14    record.

15         And there's a plea supplement.  The plea supplement is

16    dated at the bottom.  First page is dated February 12, 2015.

17    Then there's page 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14,

18    15.  And it ends with paragraph 9, which starts on page 14 and

19    ends on page 15 with 9(j).  After (j) are the declarations, and

20    then at the top of page 16 are the signature of the same

21    parties I mentioned earlier and the same dates, that is,

22    February 25, 2015.  I'll make this a part of the record in the

23    usual and normal course, that is, under seal.  The plea

24    supplement, just as the plea supplement in the Christopher Epps

25    case is to be made -- is to be filed under seal.

1    Mr. McCrory, you and your counsel have a seat now.

2    I'm going to hear from the prosecution what the prosecution

3    says it would be able to prove if this matter were to go to

4    trial.  All right.

5    MR. HURST:  Thank you, Your Honor.  If this case were

6    to proceed to trial, the government would prove the following

7    facts as it relates only to Count 23:

8    From 2002 through 2014, codefendant Christopher B.

9    Epps served as the commissioner of the Mississippi Department

10   of Corrections.  Beginning at least in 2006, the defendant

11   Cecil McCrory, his companies and companies that paid McCrory,

12   began receiving contracts from MDOC at the direction of

13   codefendant Epps sometime on a no-bid basis.

14   In return for these contracts and in order to secure

15   future contracts and favors, beginning in July of 2008 the

16   defendant Cecil McCrory began paying codefendant Epps beginning

17   with a transfer of funds from McCrory to the financial

18   institution that held the mortgage for Epps' home.

19   During this one-year period from July of 2008 through

20   July of 2009, defendant McCrory sent four cashier's checks

21   totaling $351,309.81 to the mortgage company holding the

22   mortgage on Epps' home resulting in Epps' home mortgage being

23   completely paid off.

24   Epps thereafter used the equity from the proceeds of

25   that specified unlawful activity to take out a loan to purchase

1    a beach condo in Biloxi, Mississippi, thus concealing and

2    disguising the nature and source of the proceeds from the

3    specified unlawful activity.

4          During the time period of this conspiracy, defendant

5    McCrory also gave cash bribes and kickbacks to codefendant

6    Epps, which Epps told McCrory that Epps would put these bribes

7    and kickbacks in his safe at home until he was ready to deposit

8    such cash bribes into various bank or investment accounts, use

9    such cash to purchase cashier's checks or spend such cash to

10   make other purchases.

11         Codefendant Epps would later structure these deposits

12   and purchases into his bank or investment accounts, comingling

13   the money with his salary and other legitimate income in order

14   to conceal and disguise the nature and source of these proceeds

15   of this specified unlawful activity.

16         Codefendant Epps would also electronically transfer

17   money between his comingled accounts and his investment account

18   in order to further conceal and disguise the bribes.  And

19   codefendant Epps would conduct other financial transactions

20   with the bribe proceeds by structuring the purchase of

21   cashier's checks and depositing those checks into his Edward

22   Jones investment account or use towards the payment for his

23   Mercedes Benz automobiles.

24         On one occasion codefendant Epps brought the defendant

25   McCrory a tote bag which contained $40,000 in cash bribes, and

codefendant Epps told defendant McCrory, "I need you to get that to my guy at Edward Jones."

Epps left a note in the bag with instructions for defendant McCrory on where to wire the money. Defendant McCrory thereafter deposited the money into one of his accounts and wired from McCrory's tractor store business accounts to Epps' Edward Jones investment account with McCrory falsely labeling the wire transaction as a consignment sale of farm equipment and similarly falsely recording the wire transaction in the books and records of the tractor store in order to conceal and disguise the scheme.

During this time period, Your Honor, codefendant Epps received and laundered almost $1 million in cash bribe money during the period of the conspiracy.

In 2012 defendant McCrory made two wire transfers totaling almost $50,000 to the bank which held the loans for codefendant Epps' beach condo in Biloxi. Shortly thereafter codefendant Epps paid off his beach condo mortgage using bribe money that he structured the bank and investment accounts via cashier's checks he had purchased in amounts less than $10,000 in order to avoid detection.

In 2013 codefendant Epps used the equity from his paid-off Biloxi beach condo and cash from his Edward Jones investment account in which he had already structured the proceeds of bribes and kickbacks in order to purchase a more

1  expensive beach condo in Pass Christian for almost a half a

2  million dollars.

3       Epps later replenished his Edwards Jones account from

4  which he had used to buy this condo by depositing structured

5  cashier's and bank checks in amounts less than $10,000 into his

6  Edward Jones account.

7       In addition, the defendant McCrory wired $50,000 from

8  one of his business accounts directly to Epps' Edward Jones

9  investment account.

10      In summary, this conspiracy between codefendant Epps

11 and defendant McCrory to launder bribes and kickbacks resulted

12 in Epps being able to purchase outright three Mercedes Benz,

13 two beach condos, a half million dollar home, and fund an

14 almost $1 million retirement account and other bank accounts in

15 return for McCrory's companies being paid over $2 million by

16 the MDOC for contracts and leases awarded since 2006 by or at

17 the direction of Epps and for McCrory being paid over

18 $3 million by various companies which had been awarded MDOC

19 contracts since 2006, sometimes on a no-bid basis at the direct

20 request of Epps.

21           THE COURT:  Mr. Hurst, the $2 million you read off --

22           MR. HURST:  Yes, Your Honor.

23           THE COURT:  -- and the $3 million you read off --

24           MR. HURST:  Yes, Your Honor.

25           THE COURT:  -- are they the same monies?

1    MR. HURST:  They are not, Your Honor.  The $2 million

2  was monies paid directly from MDOC to companies that

3  Mr. McCrory either partially owned or fully owned for contracts

4  with MDOC.  The $3 million is where Mr. McCrory was hired as a

5  consultant by outside companies to consult for the contracts

6  with MDOC.

7    THE COURT:  And these contracts, they were just to get

8  contracts.  So he was hired has a consultant, you're saying.

9    MR. HURST:  For the $3 million that's correct, Your

10  Honor.

11    THE COURT:  Okay.  Thank you.  You all can approach

12  the podium again.  Mr. McCrory, did you hear what Mr. Hurst had

13  to say?

14    THE DEFENDANT:  Yes, sir.

15    THE COURT:  Do you disagree with any of his statement?

16    THE DEFENDANT:  No, sir.

17    THE COURT:  So then with regard to this count 23, I'd

18  like to hear in your words what makes you guilty of the

19  accusations of Count 23.

20    THE DEFENDANT:  Your Honor, Mr. Epps talked me into

21  making that first payment on his house and it took a month to

22  persuade me to do it, but I did it.  And then it was just gone

23  from there seems like.  It's something I never thought that I

24  would do, but I did it.  So, you know, I can't take it back,

25  but that's how it started.

1          THE COURT:  So then with regard to making these

2     payments to Mr. Epps, did you do that?

3          THE DEFENDANT:  I did.

4          THE COURT:  And the prosecution says that you were

5     directed at times where to make the payment.  Did you do that?

6          THE DEFENDANT:  Yes, I was.

7          THE COURT:  And sums of money that the prosecution

8     read off, are those the sums that were involved?

9          THE DEFENDANT:  The $3 million that were paid to my

10    companies that wasn't profit that I put in my pocket.  That was

11    operating restitution centers for DOC, which I ended up losing

12    about $200,000 in.  And in exchange for the lease, I donated

13    all the property back to the state.  So I mean they kind of

14    broke even on that one.

15         THE COURT:  What about the consultation matter?

16         THE DEFENDANT:  Yes, sir.  I was paid by companies who

17    got contracts here.

18         THE COURT:  All right.  The prosecution says that you

19    derived some 2 or $3 million from that.

20         THE DEFENDANT:  From consulting?

21         THE COURT:  Yes.

22         THE DEFENDANT:  Over a period of time I would say

23    that's probably right.

24         THE COURT:  Okay.  So then this conduct, did that

25    amount to a bribe?

1      THE DEFENDANT:  This conduct?

2      THE COURT:  Yes, the conduct we're talking about now,

3  would you describe it then as the prosecution does as the bribe

4  and kickback?

5      THE DEFENDANT:  Yes, sir.

6      THE COURT:  And with regard to any defense for that

7  conduct, do you have a legal defense for that conduct?

8      THE DEFENDANT:  Not one that I can think of.

9      THE COURT:  And you discussed this matter thoroughly

10  with your lawyer?

11      THE DEFENDANT:  I have.

12      THE COURT:  So then now with regard to Count 23, how

13  do you plead?  Guilty or not guilty?

14      THE DEFENDANT:  I plead guilty, Your Honor.

15      THE COURT:  Since you acknowledge that you are in fact

16  guilty as charged, since you know your rights to a trial, since

17  you know what the maximum possible punishment is and since

18  you're voluntarily pleading guilty, I will accept your plea of

19  guilty as to Count 23 of the indictment and I hereby enter a

20  judgment of guilty against you as to that count.

21      Now, I will sentence you on June 10th, 2015, at

22  9:30 a.m. here in this courtroom.  That's 9:30 a.m. June 10,

23  2015.  Meanwhile, the United States probation office will

24  prepare a presentence investigation report on you.  This report

25  will be comprehensive, and I will use that report to determine

1  what the appropriate sentence should be.  This report will

2  contain a great deal of information about you.

3      The probation officer will wish to interview you on

4  some matters.  Now, I urge you to cooperate with the probation

5  officer; but if the probation officer asks you any questions

6  that you feel or your counsel feels would incriminate you on

7  some other matter, you have a right not to answer that

8  question.  Do you understand that?

9      THE DEFENDANT:  Yes, sir.

10     THE COURT:  Now, I alluded to your counsel being

11  present with you.  Do you understand that you have a right to

12  have your lawyer present with you at all times?

13     THE DEFENDANT:  Yes, sir.

14     THE COURT:  With the probation officer.  Do you

15  understand that?

16     THE DEFENDANT:  I do.

17     THE COURT:  I would expect that before you come back

18  here that you will read the presentence investigation report

19  because you should be able to get a copy of it some ten days

20  before you come back here, ten days before the sentencing.  So

21  you should have enough time to read it, digest it, and go over

22  it with your counsel.

23     If you have questions, then you go ever those

24  questions thoroughly with your lawyer.  If you find anything in

25  that report to your dislike, make sure to let you lawyer know.

1    If you feel like you need to add something, make sure you let

2    your lawyer know.  If there's something in there that you feel

3    is unnecessarily or unduly prejudicial, let your lawyer know.

4    If something shouldn't be in there, certainly let your lawyer

5    know.

6              Now, I'm going to read every page, every sentence of

7    the presentence investigation report so I'm going to be

8    familiar with that whole document.  So if something is in there

9    that I shouldn't see, then you need to be the guardian of that.

10   Let your lawyer know, and your lawyer can talk to probation and

11   then if that is correct then you all can take it out and I

12   won't see it.

13             But on the other hand, if you do not make an objection

14   when you should, then keep in mind I would have read it.  That

15   doesn't mean it's going to prejudice me because if I shouldn't

16   consider it.  I won't consider it.  But it might bear on your

17   mind whether I did consider it, if you know there's something

18   in there I shouldn't see.  I can assure you that if I say I

19   will not consider it, I won't consider it.  But, nevertheless,

20   there might not be very much satisfaction to you if you think

21   I've already seen it and think I have been prejudiced by

22   whatever is in there.  So the best thing to do is make sure you

23   read it thoroughly.  Okay?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  Now, is there a matter -- is there a

motion concerning forfeiture?

MR. HURST:  There is, Your Honor.

THE COURT:  Discuss that with me.

MR. HURST:  Yes, Your Honor.  Similar to Mr. Epps, there is an agreed preliminary order of forfeiture between the parties in this case.  This one is actually 25 pages long. Would the court like me to go parcel by parcel with the court or like to review it yourself, Your Honor?  I can give you the Highlights.

THE COURT:  Well --

MR. HURST:  It's a lot more real estate involved which is why it is 25 pages.  And honestly because it's legal descriptions, I really don't know how I'm going to be able to describe it to the court rather than just letting the court review it.

THE COURT:  Let me review it.

MR. HURST:  It was signed today right as the hearing was starting by all sides.  It's been going back and forth between the parties, including one last-minute change this morning that both parties agreed to, but I believe Mr. Leland can speak to his client's review of it too.

THE COURT:  I'm going to ask him in just a moment. First let me have a copy.  Mr. Leland, do you have a copy of this?

MR. LELAND:  I, do Your Honor.

1          THE COURT:  All right.  Do you have a copy you're

2    sharing with your client?

3          MR. LELAND:  I do, Your Honor.

4          THE COURT:  Okay.  Now, let's look at this agreed

5    preliminary order of forfeiture.  It has certain paragraphs

6    here.  On the first page there are two paragraphs, paragraph 1

7    that discusses the awareness of the consequences known by

8    defendant for entering into this agreement, that the defendant

9    is freely and voluntarily entering into this agreement with

10   knowledge of consequences.  Do you see that, Mr. McCrory?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  Do you agree?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  The second paragraph starts off with the

15   asset.  It start with number 1, the $1,200,000.  Do you see

16   that?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Number 2, real property and that real

19   property under 2 starts off with unit number 502, Sea Breeze

20   Condominium.  Do you see that?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  That's included.  The third one is real

23   property as unit 601, Sea Breeze Condominiums.

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Number 4 is property described as Unite

1   U-N-I-T-E.  Is that United or Unite?

2          MR. HURST:  It should be "unit," Your Honor.

3          THE COURT:  Unit?

4          MR. HURST:  It should be unit.

5          THE COURT:  The "E" should not be there?

6          MR. HURST:  The "E" should not be there.

7          THE COURT:  Then the parties take note that I am

8   striking through the "E" and I'm putting my initials right

9   above it, "HTW."  All right.  Now, then, it says unit number

10  504 Sea Breeze Condominiums, and then the next paragraph is

11  Cabana C-4 Sea Breeze condominiums.  Do you see that again,

12  Mr. McCrory?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  At the top of page 3 there's a

15  continuation of a sentence from the preceding page, and then

16  number 5.  Under 5 it says, real property located at 104 Office

17  Park drive, and then it has tract 1.  Now, under that it says,

18  see also and then it's a tract 2.  Do you see those?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Page 4, it continue with tract 2, and then

21  we come to number 6.  It says Christian Drive and Highway 18

22  Brandon, Rankin County, Mississippi.  And then it says a tract

23  or parcel of land containing 4.15 acres situated in Southeast

24  one quarter of the Southwest one quarter of Section 18, et

25  cetera.  Do you see that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  And then there's a metes and bounds

3    description which says where it commences at the Southeast

4    corner, and then next line it talks about the North and then

5    after that the West, and then Southeast, South, South, North.

6    Do you see all of those on page 4?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  At the top page 5, it continues with North

9    62 degrees, North 27 degrees, North 70 degrees in three

10   different paragraphs.  And then it has less and except, and

11   then it excepts a parcel of land being situated, and then it

12   gives metes and bounds again in the Southeast one quarter of

13   Southwest one quarter of Section 18, Township 5 North, Range 3

14   East, City of Brandon, Rankin County, Mississippi, described as

15   follows.

16         And there after in two paragraphs are some

17   descriptions.  You see those?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  And then it says less and except and then

20   it talks about a tract or parcel of land containing 1.45 acres

21   more or less being situated in the Southeast one quarter of the

22   Southwest one quarter of Section 18.  Do you see that at the

23   bottom?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  It continues over to the top of page 6,

1    and then we have number 7.  It says a certain parcel of land

2    being situated in the east one half of Section 24 T5N-R2E

3    Rankin County, Mississippi, and being more particularly

4    described as follows.  Then it says parcel 1.  Do you see all

5    of that?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  And a full description after that?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  After that, the next paragraph at the

10   bottom, do you see parcel 2?  The description for parcel 2 is

11   at the top of page 7.  Thereafter is parcel 3.  And then the

12   last words on page 7, are, quote, less and except, unquote.

13             Continue over to page 8 with again a description of

14   metes and bounds description, and that takes up the whole page

15   8.

16             Then we go to page 9 and also metes and bounds take up

17   page 9, comments down to less and except, and then we have a

18   tract or parcel of land containing 1.44 acres more or less

19   lying and being situated in the Southwest one quarter of the

20   Northeast one quarter of Section 24, Township 5 North, Range 2

21   East, City of Pearl, Rankin County, Mississippi, and being more

22   particularly described by metes and bounds as follows.

23             Then there's one line there dealing with a fence post.

24   At the top of page 10, the description continues on down to

25   number paragraph 8.

1           At paragraph 8, we find 100 nonexclusive ingress,

2    egress easement, and then the easement is described.  And it's

3    described by metes and bounds for the rest of that paragraph.

4           Then on page 11, we have clerk of Rankin County,

5    thence at the top, and the metes and bounds description

6    continues.  Do you agree with me on that?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  That's the end of page 11.  Page 12 ends

9    with the metes and bounds description at the top, and then we

10   pick up with paragraph 9, which starts with one 2013 Chevrolet

11   Avalanche, and there is a VIN number.  Do you see that?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  After that is a 3.  Now, the 3 is there

14   because when we started on page 1.  We had a 1 and a 2, but the

15   2 had all of these subparts.  Do you agree with me on that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  The two had subparts starting with 1 and

18   2, 3 and 4, 5 and 6 that I was reading off 7, 8, and 9.  And

19   now we start with 3.  Are you with me?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  So number 3, it says that the defendant

22   has been apprised that Rule 32.2 of the Federal Rules of

23   Criminal Procedure and Title 18 United States Code Section 982

24   require the court to order the forfeiture of the above

25   described property at and as a part of the sentencing

proceeding.  The defendant does hereby waive such requirement
and the requirement that the forfeiture be made a part of the
sentence as ordered by the court in the document entitled
Judgment in a Criminal Case.  The defendant and his attorney
further agree that the court should enter this order
immediately and agree that the forfeiture ordered hereunder
will be a part of the sentence of the court regardless whether
ordered at that proceeding and/or whether attached as a part of
the said judgment in a criminal case.  Do you agree with that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Then it says therefore ordered and
adjudged and follows.  Then it says what you shall forfeit
starting with the $1,200,000, with real property we just
described.  Then the adjudication section of the order
adjudicates that which I've read already.  Do you agree with
that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Then on page 22 at the bottom, under 9(b),
right after the mentioning of the one 2013 Chevrolet Avalanche
with this VIN number is (b) the court has determined based on
this defendant's plea agreement and plea supplement that the
following property is subject to forfeiture pursuant to
Title 18 United States Code Section 982(a)(1), that the
defendant had an interest in such property and that the
government has established the requisite nexus between such

1    property and such offense.  Do you agree?

2           THE DEFENDANT:  Yes.

3           THE COURT:  (c).  Now, before I go into (c), I wanted

4    to mention that at the bottom of page 22, we have the paragraph

5    9, and then we have 9(b).  We do not have a 9(a).  Do you

6    agree, Mr. Hurst?

7           MR. HURST:  I do, Your Honor.

8           THE COURT:  Mr. Leland, do you agree?

9           MR. LELAND:  Yes, sir.

10          THE COURT:  There is no 9(a).  It is paragraph 9, then

11   it goes directly into (b).  Now, I've already discussed what

12   (b) says.  And then (c).  The United States may conduct any

13   discovery it considered necessary to identify, locate, or

14   dispose of the property subject to forfeiture or substitute

15   assets for such property.  Do you understand what that means,

16   Mr. McCrory?

17          THE DEFENDANT:  I do.

18          THE COURT:  You understand that by discovery that

19   means that the government can make inquiry, legal inquiry, as

20   to the disposition of any of this property?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  When it says discovery, do you know that

23   discovery is a broad term?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Do you know that discovery means more than

1    simply looking with one's eyes at something but discovery in

2    the legal context means that the government can pursue matters

3    of depositions, interrogatories, requests for admissions, et

4    cetera?  There is a body of law that deals with discovery in

5    civil cases so that term has a special meaning in terms of

6    making an inquiry into the nature of something.  Do you

7    understand that?

8              THE DEFENDANT:  I understand.

9              THE COURT:  Mr. Leland, did you explain all of this to

10   your client?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  So he understands that there could be some

13   depositions here, there could be some interrogatories here, et

14   cetera?  He understands that?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  (d), the United States shall publish

17   notice of the order and its intent to dispose of the property

18   in such a matter as the United States Attorney General may

19   direct.  The United States may also to the extent practical

20   provide written notice to any person known to have an alleged

21   interest in the subject property under federal criminal rules

22   of procedure 32.2(C)(1).  Do you understand what all this

23   means?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  So then the government has to publish

notice if it wishes to dispose of any of this property, given

any interested person an opportunity to object to the

disposition of the property.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  (e), any person other than the above-named

defendant asserting a legal interest in the subject property

may within 30 days of the final publication of notice or

receipt of notice, whichever is earlier, petition the court for

a hearing without a jury to adjudicate the validity of his

alleged interest in the subject property and for an amendment

of the order of forfeiture pursuant to 21 USC Section 853(n).

So any person other than you who claims an interest in any of

this property upon receiving notice can file an objection to

the government's disposition of this matter.  Do you understand

that?

THE DEFENDANT:  Yes, sir.

THE COURT:  They have 30 days of the final publication

of notice, or this hearing notice, whichever is earlier, to

petition the court for a bench hearing on the matter, that is,

a hearing before the judge.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  The hearing will be before me, and I will

make the determination whether there should be an adjudication

in favor or not in favor of the person who's asserting an

interest in the property.  Do you understand that?

1        THE DEFENDANT:  Yes, sir.

2        THE COURT:  All of this would exclude you.  Do you

3   understand that too?

4        THE DEFENDANT:  Yes, sir.

5        THE COURT:  If pursuant to Federal Rule of Criminal

6   Procedure 32.27(b)(4)(A) this preliminary order of forfeiture

7   shall become final as to the defendant at the time of

8   sentencing -- there's a bracket -- or before sentencing if the

9   defendant consents -- closed bracket -- and shall be made part

10  of the sentence and included in the judgment if no third party

11  files a timely claim, this order shall become the final order

12  of forfeiture as provided by Federal Rule of Criminal Procedure

13  32.2(C)(2).  Do you understand all of that?

14       THE DEFENDANT:  Yes, sir.

15       THE COURT:  (g), any petition filed by a third party

16  asserting an interest in the subject property shall be signed

17  by the petitioner under penalty of perjury and shall set forth

18  the nature and extent of the petitioner's right, title, or

19  interest in the subject property, the time and circumstances of

20  the petitioner's acquisition of the right, title, or in the

21  subject property, any additional facts supporting the

22  petitioner's claim and the relief sought.  All of that concerns

23  the right of any petitioner, that is, a third party who assert

24  a claim to any of this property.  Do you understand that?

25       THE DEFENDANT:  Yes, sir.

1    THE COURT:  (h), after the disposition of any motion

2    filed under Federal Rule of Criminal Procedure 32.2(c)(1)(A)

3    and before a hearing on the petition discovered may be

4    conducted in accordance with the Federal Rules of Civil

5    Procedure upon a showing that such discovery is necessary or

6    desirable to resolve factual issues.  This is the same allusion

7    to discovery that I mentioned earlier.  Do you understand that?

8    THE DEFENDANT:  Yes, sir.

9    THE COURT:  (i), The United States shall have clear

10    title to the subject property following the court's disposition

11    of all third-party interests or if none following the

12    expiration of the period provided in 21 USC Section 853(n)(2),

13    which is incorporated by 18 USC Section 982(b),

14    31 USC Section 5317(c) and 5332 and 28 USC Section 2461(c) for

15    the filing of third-party petitions.

16    So you understand that the United States will have

17    clear title if I rule that no one has a claim or after someone

18    asserts the claim and successfully prevails on that then the

19    remaining property will be forfeited by the government?  Do you

20    understand that?

21    THE DEFENDANT:  Yes, sir.

22    THE COURT:  Are you married?

23    THE DEFENDANT:  Yes, sir.

24    THE COURT:  The court shall retain jurisdiction to

25    enforce this order and to amend it as necessary pursuant to

1  Federal Rule of Criminal Procedure 32.2(e)(2)(A).  And there's

2  the signature of Mr. Hurst, Mr. McCrory, and Mr. Leland.  Did

3  you follow me on all of this?

4          THE DEFENDANT:  Yes, sir, I did.

5          THE COURT:  So then, Mr. McCrory, your wife is not a

6  signatory to this document?

7          THE DEFENDANT:  No, sir.

8          THE COURT:  Okay.  And, Mr. Hurst, you agree then that

9  the court will await to determine whether she is going to

10  assert an interest here?

11         THE DEFENDANT:  Yes, Your Honor, the court will

12  waive -- my understanding from Mr. McCrory is there will be no

13  assertion of third-party right here.

14         THE COURT:  Okay.  Then the court will make the

15  determination as to these days elapsed and determine if anyone

16  has raised a claim.

17         MR. LELAND:  Your Honor, I think there's -- from what

18  I understand, there is -- one of these condominiums is

19  50 percent owned by someone else.  We have no idea.  We have

20  not talked to him.  We don't have any idea what he's going to

21  do.

22         THE COURT:  Okay.  I will await to determine what

23  course is taken should the court receive a third-party claim.

24  Meanwhile, the court is going to place on the record this

25  agreed preliminary order of forfeiture signed by the parties

1  and now signed by the court.

2       Mr. McCrory, I have adjudicated you guilty of Count

3  23, and I have told you when sentencing is going to be.  And I

4  have advised you that at sentencing I will expect that you will

5  have read the presentence investigation report thoroughly and

6  discussed it thoroughly with your lawyer.

7       Now, then, I need to ask the prosecution what is its

8  stance on the continued liberty of the defendant at this point?

9       MR. HURST:  Your Honor, the government has no

10  objection to this defendant continuing to remain on his current

11  bond.

12       THE COURT:  Mr. Leland, are you making that motion for

13  your client to remain free on bond?

14       MR. LELAND:  We so move, Your Honor, on his current

15  bond.

16       THE COURT:  What is that bond?

17       MR. LELAND:  50,000 is my recollection, Your Honor.

18       THE COURT:  And what is it?  Cash?  A surety?  What is

19  it?

20       MR. LELAND:  It's just a surety bond.  He was never --

21  he never posted a bond.  They didn't ask that he post it.

22       THE COURT:  Okay.  Mr. McCrory, I'm going to allow you

23  to remain free on bond, and whatever conditions and

24  restrictions now engulf you, you are still bound by those

25  conditions and restrictions.  The court expects that you will

1   reappear in this courtroom on June 10, 2015, at 9:30 a.m.

2   Furthermore, the court is persuaded at this point that you will

3   not commit any additional crime.  If you are not here at the

4   assigned time or if the government feels that you have violated

5   the conditions of your bond, then the government will have you

6   back here.  Do you understand that?

7          THE DEFENDANT:  I do.

8          THE COURT:  Now, with regard to firearms, did you hear

9   what I told Mr. Epps concerning firearms?

10         THE DEFENDANT:  I don't own any firearms.

11         THE COURT:  All right.  And then you can't possess

12  them or own them.  Do you understand that?

13         THE DEFENDANT:  I do.

14         THE COURT:  And the firearm is a pistol, a rifle, a

15  shotgun, for whatever use you intend to make of it, whether

16  hunting, protection, or even gun collecting.  This prohibition

17  also concerns ammunition, and this prohibition will last for

18  the rest of your life.  And if it's disobeyed, then you'll be

19  back here and you could be subject to further discipline by the

20  court.  Do you understand that?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  Did I say it is for the rest of your life?

23         THE DEFENDANT:  You did.

24         THE COURT:  So then makes sure you remember that

25  because so many people do not.  And that means that you cannot

1    actually possess a firearm, that is, have in your possession,

2    in your hand, on your person, but you can't even have it in a

3    car in which you're riding or in your house, because you have

4    control over your house and you have control over your car.

5              So any area over which you have control from which you

6    can readily obtain the firearm would an area that could be

7    deemed constructive possession and therefore chargeable to you

8    if a firearm is under your constructive possession.  Do you

9    understand that?

10             THE DEFENDANT:  I do.

11             THE COURT:  Now, is there anything further from the

12   government?

13             MR. HURST:  Not from the government, Your Honor.

14             THE COURT:  Anything further, Mr. Leland?

15             MR. LELAND:  Nothing from the defense, Your Honor.

16             THE COURT:  Mr. McCrory, anything further from you?

17             THE DEFENDANT:  No, sir.

18             THE COURT:  I will see you all back here on June 10,

19   2015, at 9:30 in the morning.

20             MR. HURST:  Thank you, Your Honor.

21             MR. LELAND:  Thank you, Your Honor.

22        (Hearing Concluded)

23

24

25

1        CERTIFICATE OF REPORTER

2

3        I, CHERIE GALLASPY BOND, Official Court Reporter, United

4   States District Court, Southern District of Mississippi, do

5   hereby certify that the above and foregoing pages contain a

6   full, true and correct transcript of the proceedings had in the

7   aforenamed case at the time and place indicated, which

8   proceedings were recorded by me to the best of my skill and

9   ability.

10        I certify that the transcript fees and format comply

11   with those prescribed by the Court and Judicial Conference of

12   the United States.

13

14        This the 22nd day of February, 2016.

15

16                        s/ *Cherie G. Bond*
                          Cherie G. Bond
17                        Court Reporter

18

19

20

21

22

23

24

25