# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

UNITED STATES OF AMERICA

v.                                    CRIMINAL NO. 3:14cr111HTW-FKB

CECIL MCCRORY

---

## GOVERNMENT'S RESPONSE TO DEFENDANT'S
## MOTION TO WITHDRAW GUILTY PLEA

---

Defendant Cecil McCrory moves to withdraw his guilty plea, arguing

that that he is innocent, that his former counsel failed to provide close

assistance, and that his plea was unknowing and involuntary.  *See* Dkt. No.

92.  McCrory's motion should be denied and his sentencing should not be

delayed any longer.

## I.  BACKGROUND

### A.    McCrory's Criminal Conduct & Indictment

For more than seven years, Cecil McCrory conspired with

Christopher Epps to receive bribes and kickbacks from companies who

wished to secure contracts with the state agency run by Epps. In early 2014, while this criminal activity continued, federal investigators contacted McCrory, laid out the evidence that the government had against him, and sought his cooperation. After seeing the government's evidence, McCrory admitted that the government "had him." He then voluntarily agreed to assist the government in its ongoing investigation into other related bribes and kickbacks.

After many months of voluntary cooperation, McCrory retained a lawyer. In August of 2014, a grand jury indicted McCrory for some of his illegal conduct. Dkt. No. 3.

## B.    Post-Indictment Activities

On November 6, McCrory appeared in court and pled not guilty to the fifteen charges against him. Dkt. Entry dated 11/06/2014. Trial was set for January 2015. *Id*.

The government produced discovery in accordance with the Court's discovery order. Thereafter, McCrory—through able counsel—moved to continue his trial, specifically noting the "breadth and scope" of discovery

and averring that his motion was "not for the purpose of delay" but was "for the specific purpose of assuring that [he] ha[d] the time required to review the tremendous volume of discovery" and "to adequately prepare his response to the Government's charges."  Dkt. No. 26, at 1.  The government did not oppose McCrory's motion, and the Court promptly granted his request, continuing trial to April 6, 2015.  Dkt. No. 28.

## C.    McCrory's Guilty Plea

Two months later, McCrory informed the Court that he wished to change his plea.  On February 25, 2015, the Court conducted an exhaustive Rule 11 colloquy and accepted McCrory's plea of guilty as to one of the fifteen counts against him.[1]  Dkt. No. 95.

During that hearing, McCrory was sworn in.  *Id.* at 2.  Thereafter, this Court ensured that McCrory was educated, could read and write, was not under the influence of drugs or alcohol, and was competent.  *Id*. at 4-5.  The Court also questioned McCrory as to his mental health history, including

---

[1] McCrory benefited from hearing the Rule 11 plea colloquy from his co-conspirator, Christopher Epps.  He repeatedly informed the Court that he heard critical aspects of that plea colloquy and that he had no questions as a result of what he heard.  *See generally* Dkt. No. 95.

whether he was able to distinguish between right and wrong at the time of the offense alleged in the relevant count of the indictment. *Id*. at 6-7. McCrory assured the Court that he was. *Id*. McCrory's counsel—on behalf of his client and as an officer of the Court—confirmed that there was no reason to question McCrory's competency. *Id*. at 7. The government agreed. *Id*. Based on the Court's own colloquy with McCrory as well as the responses of counsel, the Court was satisfied that McCrory was competent at the time of the guilty plea hearing and at the time of the offense alleged in the relevant count of the indictment. *Id*. at 7.

The Court asked McCrory whether he was satisfied with the time and quality of advice that his retained counsel had given him. *Id*. at 7-8. McCrory assured the Court that he was satisfied in all respects:

> COURT: Have you had enough time to discuss your case with your lawyer?
>
> McCRORY: Yes, sir.
>
> COURT: Are you satisfied with the amount of time he's spent with you?
>
> McCRORY: I am.
>
> COURT: Are you satisfied with his advice to you?

McCRORY:   Yes, sir.

COURT:   If you have any complaints about the way he has handled your case, you need to tell me now. Do you have any complaint about the way he has handled your case?

McCRORY:   No, sir.

*Id*.

The Court then reviewed McCrory's rights, including his rights to a trial by jury, to be involved in jury selection, to acquittal in the absence of a unanimous guilty verdict, to the presumption of innocence, to cross-examine witnesses and object to evidence, to call his own witnesses and submit evidence to the jury, to testify (or not), and to have his silence (if any) not used against him. *Id*. at 8-13. The Court also informed McCrory of the government's burden to prove McCrory's guilt beyond a reasonable doubt. *Id*. at 9. McCrory assured the Court that he understood these rights and that he understood that he was waiving them by pleading guilty. *Id*. at 8-14. McCrory further acknowledged that he understood that, by pleading guilty, he would "proceed[] directly to sentencing." *Id*. at 14 (affirming that he still wished to plead guilty).

The Court then reviewed the substantive count to which McCrory asked to plead guilty (i.e., Count 23), including all relevant paragraphs of the indictment. *Id*. at 14-19. McCrory assured the Court that he understood the charge, that he had read the indictment language multiple times, and that he had no questions. *Id*. at 6-7, 14-19.

The Court explained the elements that the government was required to prove if McCrory was to be convicted of the crime alleged in Count 23. *Id*. at 19-27. The Court defined relevant terms, including "knowingly" and "willfully." McCrory confirmed that he understood the elements and definitions, including the meaning of "knowingly," "knew" and "willfully." *Id*. When asked whether he had any questions about the elements that the government would have to prove for Count 23, McCrory said, "No." *Id*. at 27.

The Court informed McCrory of the maximum penalties for Count 23. *Id*. at 27-28. McCrory confirmed that he understood these penalties. *Id*. When asked whether there was "anything about what [the

Court had] gone over that generate[d] any question in [his] mind that [he] wish[ed] to discuss," McCrory answered, "No, sir, no." *Id*. at 28.

McCrory agreed that he was offering his plea voluntarily and confirmed that no one forced him to plead guilty. *Id*. at 28-29.

The Court then asked the government to review the plea agreement. The government did so, highlighting those rights that McCrory waived by pleading guilty. *Id*. at 29-33 (noting waivers of, *inter alia*, the right to contest the conviction and to appeal the conviction and sentence). The Court made sure that McCrory understood that the Court was not bound by any sentencing recommendation or calculation from any source:

> COURT: [D]o you understand that, if this agreement contains some promise by the government to make a recommendation at sentencing to me, that I would not be bound at sentencing by that recommendation?
>
> McCRORY: I understand that.
>
> COURT: [D]o you understand that I could sentence you up to the maximum as [authorized] by law?
>
> McCRORY: Yes, sir.
>
> . . .

COURT:        So, do you understand then that, with regard to
              the sentence that this Court could impose, it is
              totally within this Court's discretion?

McCRORY:      I understand that.

COURT:        And, the Court could sentence you to the highest
              part of the statute or the guidelines or both.  Do
              you understand that?

McCRORY:      I understand it.

COURT:        [E]ven though the prosecution may have shared
              with you its thoughts about what you might face
              with regard to the sentencing guidelines, and your
              counsel may have also joined in that prediction,
              do you understand that I and I alone will be the
              one to determine what the guidelines are?

McCRORY:      Yes, sir.

COURT:        And, do you further understand that, in making
              that determination, that I'm not bound by
              anybody else's calculations?  Do you understand
              that?

McCRORY:      Yes, sir, I understand.

*Id*. at 30-32.  McCrory confirmed that he understood that, even if the

government recommended a sentence "under the guidelines," the Court

had the option to sentence him "under the statute."  *Id*. at 31-32; *see also id*.

at 37-38 (confirming McCrory's understand that, by pleading guilty, he

waived the right to appeal what he may feel is an "unjust, inadequate, or imprudent sentence").

McCrory acknowledged that he signed the plea agreement, plea supplement, and agreed preliminary order of forfeiture. *Id*. at 33-40, 50. His counsel stated that McCrory first received these documents on February 12—more than two weeks before the hearing. *Id*. at 33-34. McCrory's counsel further explained: "There have been many iterations between February 12th and now." *Id*. at 34. McCrory said that he and his counsel reviewed the final drafts the morning of February 25. *Id*. McCrory and his counsel confirmed that they had adequate time to review the documents. *Id*. at 34-36. McCrory's counsel assured the Court that he reviewed the documents with McCrory and answered all of his questions. *Id*. McCrory agreed. *Id*.

McCrory also informed the Court that he and his counsel had reviewed the identical declarations at the end of the plea agreement and plea supplement. *Id*. at 36-37. McCrory stated that he agreed with the

declarations and did not have questions about them.  *Id*. at 36-37.  Those

declarations, which McCrory understood and to which he assented, stated

> **Defendant and Defendant's attorney of record declare that the terms of this plea [agreement/supplement] have been:**
>
> 1. **READ BY OR TO DEFENDANT;**
> 2. **EXPLAINED TO DEFENDANT BY DEFENDANT'S ATTORNEY;**
> 3. **UNDERSTOOD BY DEFENDANT;**
> 4. **VOLUNTARILY ACCEPTED BY DEFENDANT; and**
> 5. **AGREED TO AND ACCEPTED BY DEFENDANT.**

Dkt. No. 32.[2]

During the colloquy, McCrory acknowledge his understanding

that—even though he was pleading guilty to only one of the fifteen counts

against him—"at sentencing, this Court can take into account misconduct

alleged in other paragraphs [of the indictment] even though [McCrory was]

not pleading to them."  Dkt. No. 95, at 15, 39.  McCrory also clarified that

his counsel had explained this fact.  *Id*. at 39.

---

[2] The plea supplement was filed under seal.

Finally, McCrory agreed to the entire factual basis supporting his

plea. *Id.* at 41-45 (laying out many details of Epps's and McCrory's

successful attempts to work together to launder money). He then stated in

his own words that he was guilty: "Mr. Epps talked me into making that

first payment . . . , but I did it. And, then it was just gone from there seems

like. It's something I never thought I would do, but I did it." *Id.* at 45.

McCrory agreed that he "ma[de] the payments to Mr. Epps" and that the

conduct was a "bribe and kickback." *Id.* at 46-47. He also agreed that

companies he owned, or partially owned, earned $3 million and that he

was paid $2 million personally. *Id.* at 46. McCrory stated that, after

discussing the matter "thoroughly" with his counsel, he had no legal

defense. *Id.* at 47.

McCrory then pled guilty, and the Court accepted his plea:

> McCRORY: I plead guilty, Your Honor.
>
> COURT: Since you acknowledge that you are in fact guilty
> as charged, since you know your rights to a trial,
> since you know what the maximum possible
> punishment is, and since you're voluntarily
> pleading guilty, I will accept your plea of guilty as

to Count 23 of the indictment, and I hereby enter a
judgment of guilty against you as to that count.

*Id*. at 47.

## D.     Post-Guilty Plea Activities

The Court set McCrory's sentencing for June 10, 2015.  *Id*. at 47.

Sentencing was reset for January 28, 2016.  Dkt. Entries dated 05/19/2015

and 12/14/2015.

On December 22, 2015, the U.S. Probation Office produced its final

presentence investigation report, which provided the guidelines range for

McCrory's sentence in this case.

At some point, McCrory retained new counsel, and, on January 3,

2016, McCrory's new counsel entered a notice of appearance.  Dkt. No. 62.

A week later, McCrory moved to continue his sentencing hearing,

stating that his new counsel needed "additional time to review [the

discovery] materials and to prepare his sentencing presentation and his

objections to the Presentence Investigation Report."  Dkt. No. 63 (providing

no indication that McCrory intended to withdraw his guilty plea).  The

Court granted McCrory's request and reset sentencing for a later date.

Several status conferences and evidentiary hearings followed.  On

October 27, 2016, this Court set McCrory's sentencing hearing for

December 21, 2016.  Dkt. Entry dated 10/27/2016.

### E.    McCrory's Motion to Withdraw His Guilty Plea

Nearly six weeks later and only thirteen days before his sentencing,

McCrory moved to withdraw his guilty plea, asserting for the first time

that he is actually innocent and that he was coerced into pleading guilty.

Dkt. No. 92.  McCrory's belated protestations of innocence and coercion

come nearly two years after he entered his guilty plea on February 25, 2015,

and nearly one year after McCrory first informed the Court that he was

considering filing such a motion.[3]

---

[3] In a January 26, 2016, status conference, McCrory, through his new counsel, stated that he intended to move to withdraw his guilty plea within one week.  No motion came.  In a June 9 evidentiary hearing, McCrory's counsel again stated that he expected to file a motion to withdraw his guilty plea.  This time, McCrory's counsel stated that it would take approximately two weeks.  Again, no motion came.

## II. Legal Principles

There is no absolute right to withdraw a guilty plea. *United States v. Harrison*, 777 F.3d 227, 234 (5th Cir. 2015). A defendant can withdraw his plea "<u>only if</u> he can show a fair and just reason" for withdrawing his plea. *Id.* (emphasis added); *see also* Fed. R. Crim. P. 11(d)(2)(B).[4]

"The rationale for allowing a defendant to withdraw a guilty plea is to permit him to undo a plea that was unknowingly made at the time it was entered." *United States v. Carr*, 740 F.2d 339, 345 (5th Cir. 1984). "The purpose is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *Id*.

In determining whether the defendant has met his burden to show a "fair and just reason" to withdraw his plea, the court considers several, non-dispositive factors:

---

[4] McCrory suggests that Rule 11's " 'fair and just' standard is generous and must be applied liberally." *See* Dkt. No. 92, at 4 (quoting *United States v. McTiernan*, 546 F.3d 1160 (9th Cir. 2008). Simply put, that is not the law of this Circuit. *See United States v. Carr*, 740 F.2d 339 (5th Cir.1984) (providing an exacting standard and acknowledging the heavy burden that a defendant must meet before he is permitted to withdraw his guilty plea).

(1)     whether the defendant has asserted his innocence, and, if applicable, the reasons why defenses advanced later were not proffered at the time of the original pleading;

(2)     whether withdrawal would prejudice the government;

(3)     whether the defendant delayed in filing the withdrawal motion and the reasons why a defendant delayed in making his withdrawal motion;

(4)     whether withdrawal would inconvenience the court;

(5)     whether close assistance of counsel was available;

(6)     whether the plea was knowing and voluntary; and

(7)     whether withdrawal would waste judicial resources.

*Harrison*, 777 F.3d at 234 (citing *Carr*, 740 F.2d at 343-44).  This list is not exclusive.  *United States v. Urias-Marrufo*, 744 F.3d 361, 364 (5th Cir. 2014).

"No single factor or combination of factors mandates a particular result."  *United States v. Conroy*, 567 F.3d 174, 178 (5th Cir. 2009) (citation omitted).  Instead, the court considers the totality of the circumstances.  *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001).

"The burden of establishing a 'fair and just reason' for withdrawing a guilty plea rests at all times with the defendant."  *Id.*

## III. ARGUMENT

Before accepting McCrory's guilty plea, this Court fulfilled its Rule 11 obligations to question McCrory and ensure that his plea was knowing, voluntary, and intelligent. Satisfied on these points, this Court accepted McCrory's plea. Nearly two years later and only thirteen days before his sentencing, McCrory filed a motion to withdraw his guilty plea.

McCrory fails to meet his heavy burden to show why withdrawal of his guilty plea is "fair and just." As such, his motion should be denied.

## A. McCrory's Belated & Unsubstantiated Claim of Innocence

More than two years after his indictment and twenty-two months after he pled guilty to a single count of conspiracy to commit money laundering, McCrory now claims that he is "legally and factually innocent" of that crime. *See* Dkt. No. 92-1. In two sparse sentences, neither of which is supported by facts or evidence, McCrory declares, under penalty of perjury: "I did not conspire or agree with Christopher Epps to commit the crime of money laundering; and . . . I am legally and factually innocent of the charge to commit money laundering." *Id*.

McCrory's assertion of innocence is belied by the record. At the plea hearing, this Court thoroughly reviewed the substantive count to which McCrory asked to plead guilty, including all relevant paragraphs of the indictment. Dkt. No. 95, at 14-19. McCrory assured the Court that he understood the charge, that he had read the indictment language multiple times, and that he had no questions. *Id*. at 6-7, 14-19. This Court then explained the elements that the government was required to prove if McCrory was to be convicted of the crime alleged, and the Court defined relevant terms, including "knowingly" and "willfully." *Id*. at 19-27. McCrory confirmed that he understood the elements and definitions. *Id.* McCrory assured the Court that he had no questions about the elements that the government would have to prove for the relevant count. *Id*. at 27.

Thereafter, McCrory agreed to the entire factual basis supporting his plea. *Id*. at 41-45. He then stated in his own words that he was guilty: "I did it. . . . It's something I never thought I would do, but I did it." *Id*. at 45. McCrory agreed that he "ma[de] the payments to Mr. Epps" and that the conduct was a "bribe and kickback." *Id*. at 46-47. After making all of

these statements and assertions under oath, McCrory pled guilty, and the Court accepted that plea.

Now, for the first time, McCrory claims that he "did not conspire and agree with Christopher Epps to commit the crime of money laundering." Dkt. No. 92-1. This self-serving assertion is contradicted by the factual basis, which McCrory accepted entirely. That factual basis provided that, beginning in 2008:

- McCrory transferred funds in excess of $350,000 to pay the mortgage for Epps's home. McCrory did so "in return for . . . contracts and . . . to secure future contracts and favors." Dkt. No. 95, at 41.

- McCrory gave cash bribes and kickbacks to Epps, and Epps explained to McCrory how he would structure deposits of that money to avoid detection. *Id*. at 42.

- Epps gave McCrory a tote bag containing $40,000 in cash bribes. Epps instructed McCrory to wire the money to Epps's investment fund manager. McCrory wired that money from his business accounts, falsely labeling the transactions as farm-equipment sales and falsely recording the transactions in his business's books "to conceal and disguise the scheme." *Id*. at 42-43.

- McCrory wired nearly $50,000 to a bank holding the loan for Epps's beach condominium. *Id*. at 43.

- McCrory wired $50,000 from one of his business accounts directly to Epps's investment fund account. *Id*. at 44.

- McCrory and Epps conspired to launder bribes and kickbacks. These acts resulted in Epps being able to purchase three Mercedes Benz, two beach condominiums, a half-million-dollar home, and an investment fund worth almost $1 million. In return, McCrory's companies were paid over $2 million through contracts with the state agency run by Epps, and McCrory was paid over $3 million to be a "consultant" for companies who secured contracts at Epps's direction from that same state agency. *Id*. at 44-45.

McCrory's thin statement of innocence does not address which of these facts is untrue. Did he not transfer $350,000 to pay off Epps's mortgage or $50,000 to pay for Epps's beach condominium? Did he not take $40,000 in cash from Epps and launder that money through one of his companies? Did he not wire $50,000 from one of his business accounts directly to Epps's investment fund account? And, did he not receive—personally or through his businesses—in excess of $5 million? Did Epps and McCrory not perform these transactions and receive these monies as bribes and kickbacks in exchange for securing lucrative state contracts for McCrory's own companies and the companies of others?

McCrory's blank assertion of innocence—days before his sentencing and without any factual basis—is insufficient and unconvincing.

Even if McCrory's unsupported protestations of innocence were to be believed, "a defendant's assertion of actual innocence alone, without supporting evidence, is insufficient to warrant allowing withdrawal" of a guilty plea. *United States v. Harrison*, 777 F.3d 227, 235 (5th Cir. 2015); *see also United States v. London*, 568 F.3d 553, 563 (5th Cir.2009) (finding no error in denying a withdrawal motion where the defendant "blankly asserted his innocence, providing no facts to support [his] change of heart"). "[A] contrary rule would grant the defendant an unappropriate ability to reverse his decision to plead guilty." *United States v. Bond*, 87 F.3d 695, 701 (5th Cir. 1996) (An assertion of innocence "is insufficient on its own in the total absence of evidence to support the assertion.").

McCrory's bald and self-serving assertion of innocence does not provide a basis for this Court to find a "fair and just reason" to withdraw his guilty plea.

**B.** **McCrory's Knowing & Voluntary Plea**

At this late hour, McCrory argues, for the first time, that his guilty plea was not knowing or voluntary because it was "induced by undue coercion and threats by the government." Dkt. No. 92, at 14. McCrory claims that, "[a]t the time of his guilty plea, [he] was not aware of the actual value of any commitments made to him by the prosecutor or by his own counsel." *Id*. He also claims that the government "induced [McCrory] to engage in extreme levels of cooperation in exchange for promises to recommend that the Court impose a specified sentence of imprisonment" and that the government later refused to include such recommendation in the final plea agreement. *Id*.

These claims, even if believed, do not make McCrory's earlier admission of guilt unknowing or involuntary. At best, they demonstrate that McCrory's new counsel believes that he could have secured more favorable concessions from the government in exchange for McCrory's plea. That is speculative, at best.

McCrory concedes that the government's recommendation for McCrory's sentence is "what is typically prescribed for cooperating defendants." *Id*. at 15.  He simply suggests—without facts or evidence—that McCrory cooperated more than the typical cooperating defendant.  *Id*. (ignoring the fact that such cooperation is typically rewarded when the government recommends a downward departure pursuant to the provisions of U.S.S.G § 5K1.1 and is rarely contained within the plea supplement).

McCrory's speculation as to whether he should have received more favorable terms in his plea agreement has nothing to do with whether McCrory *knew* that he was pleading guilty to the single count of conspiring with Epps to launder money, whether McCrory *understood* the legal elements of that charge, or whether McCrory admitted—*freely and voluntarily*—that he did, in fact, commit the crime charged.  *See United States v. Harrison*, 777 F.3d 227, 236 (5th Cir. 2015) (finding "absolutely no evidence supporting . . . coercion" where the defendant "offer[ed] no elaboration or discussion of [his] allegation [that the plea bargaining

process was coercive] other than to quote at length from the transcript of

his sentencing hearing and to vaguely refer to 'the conditions of the plea

bargain agreement' ").

Simply put, McCrory has presented no proof that he entered an

unknowing or involuntary plea.  He has simply opined as to the terms of

his plea supplement and the timing of his plea.

Standing in contrast to McCrory's unsupported claims are the facts in

the record.  First, at his plea hearing, McCrory agreed that his plea was

voluntary.  Dkt. No. 95, at 28 ("COURT:  Are you offering your plea

voluntarily?  McCrory:  Yes, sir.").  He went on to confirm that no one

forced him to plead guilty.  *Id*. at 28-29 ("COURT:  Has anybody forced you

today to plead guilty?  McCrory:  No, sir.").

McCrory's statements, made under oath, carry a strong presumption

of truthfulness.  *United States v. Palmer*, 456 F.3d 484, 491 (5th Cir. 2006)

("The substance of a guilty plea has a special character.  The plea is more

than a mere confession; it is an admission that the defendant committed the

charged offense.  . . .  We consider plea colloquies solemn declarations in

open court which carry a strong presumption of verity." (citations and quotation marks omitted)).  They also directly contradict his recent assertion that he was coerced into pleading guilty.  *See United States v. Harrison*, 777 F.3d 227, 236 (5th Cir. 2015) (finding it relevant that, when asked, the defendant "declared—under oath—in open court that he had not been coerced, that he was pleading guilty voluntarily, and that he was fully informed of the rights he was waiving").

While under oath and before entering his guilty plea, McCrory assured the Court that he was of sound mind; that he understood the charge, elements, and possible penalties; that he fully understood the rights he was waiving; that he had discussed his plea with his lawyer; that he was satisfied with his counsel; that he had no questions for the Court; that the factual basis was correct; and that he, in fact, committed the conduct for which he was pleading guilty.  Dkt. No. 95, at 6-28.  This is sufficient to make his plea knowing and voluntary.  *See, e.g.*, *United States v. Puckett*, 505 F.3d 377, 382–83 (5th Cir. 2007), *aff'd in other part*, 556 U.S. 129 (2009) (finding a guilty plea knowing and voluntary where "the district court

questioned and advised [the defendant] thoroughly concerning the details and consequences of his plea; [the defendant] stated repeatedly that he understood the proceedings and acknowledged his guilt; [t]he district court's finding that his plea was intelligent and voluntary was well-supported by the record; and [the defendant] introduce[d] no evidence to show otherwise."); *Matthew v. Johnson*, 201 F.3d 353, 366 (5th Cir. 2000) (noting that, when a defendant "state[s] at his hearing that his plea [is] freely and voluntarily made, and that he underst[ands] the nature of the charges against him and the nature of the constitutional rights he [is] waiving[,] [his] statements act to create a presumption that in fact the plea is valid"); *United States v. Benavides*, 793 F.2d 612, 617 (5th Cir. 1986) (finding plea knowing and voluntary where "the requirements of Rule 11 were fully met"); *United States v. Carr*, 740 F.2d 339, 345 (5th Cir. 1984) (finding a guilty plea knowing and voluntary where the defendant acknowledged that "he fully and thoroughly understood the charges against him, . . . he understood the elements of the offense, . . . he had

discussed in detail the charges with his attorney, . . . and he admitted doing what he was charged with doing.").

Before accepting McCrory's guilty plea, this Court fulfilled its Rule 11 obligations to question McCrory and ensure that his plea was knowing, voluntary, and intelligent. Even now, after having nearly two years to reflect on the facts underpinning his guilty plea, McCrory's only complaint is about the terms of his plea agreement with the government. This is insufficient to create a "fair and just reason" to permit McCrory to withdraw his guilty plea.

## C.     McCrory's Unexplained Delay for Filing his Belated Motion

McCrory waited nearly two years after he entered his guilty plea to file his motion to withdraw that plea. His only excuses for his delay: (1) this is "one of the largest, most complex criminal cases prosecuted in this district in many years" and (2) his new counsel "maintains a busy docket." Dkt. No. 92, at 15-16. These proffered reasons are insufficient to excuse McCrory's nearly two-year delay.

The Fifth Circuit consistently finds delays in excess of three to six weeks to be excessive; McCrory's nearly two-year delay is well over that threshold. *See, e,g., United States v. Harrison*, 777 F.3d 227, 237 (5th Cir. 2015) (finding excessive delay where five weeks elapsed between guilty plea and the motion to withdraw that plea); *United States v. Carr*, 740 F.2d 339, 345 (5th Cir. 1984) (concluding that a motion was not promptly filed when defendant waited twenty-two days after guilty plea); *United States v. Thomas*, 13 F.3d 151, 153 (5th Cir. 1994) (stating that a "six-week delay between entry of the plea and motion to withdraw is significant" and affirming denial of a motion to withdraw); *United States v. Adam*, 296 F.3d 327, 332 (5th Cir. 2002) (same); *United States v. Lampazianie*, 251 F.3d 519, 525 (5th Cir. 2001) (noting that a seven-month delay weighed against the defendant).

McCrory's nearly two-year delay is "extraordinary." *United States v. Bond*, 87 F.3d 695, 701–02 (5th Cir. 1996) (finding the defendant's "two year delay in waiting to file his motion to withdraw is extraordinarily long"). As such, this factor weighs heavily against granting McCrory's motion to

withdraw his guilty plea. *United States v. Puckett*, 505 F.3d 377, 382 (5th Cir. 2007), *aff'd in other part*, 556 U.S. 129 (2009) ("[The defendant's over two-year] delay is many, many times greater than [the twenty-two day delay] in *Carr*, and he offers no explanation for why he did not seek withdrawal in a more timely fashion. This factor weighs heavily against [the defendant].").

"[T]he longer a defendant delays in filing a withdrawal motion, the more substantial reasons he must proffer in support of his motion." *Carr*, 740 F.2d at 344. McCrory provides no substantial reasons for his "extraordinarily" untimely motion. He simply states that the case is complex and that his new counsel was busy. Those facts do not go to the heart of the issue: Is McCrory guilty of the crime charged, and was his plea knowing and voluntary?

The timing of McCrory's motion suggests a tactical decision—one designed to avoid his sentencing and impending imprisonment—rather than an honest belief that he was never guilty and, for unavoidable and

understandable reasons, he could not advise the Court of that fact until this

late date. Such tactical decisions are strictly disallowed:

> The rationale for allowing a defendant to withdraw
> a guilty plea is to permit him to undo a plea that
> was unknowingly made at the time it was entered.
> <u>The purpose is not to allow a defendant to make a</u>
> <u>tactical decision to enter a plea, wait several weeks,</u>
> <u>and then obtain a withdrawal if he believes that he</u>
> <u>made a bad choice in pleading guilty</u>.

*Carr*, 740 F.2d at 345 (emphasis added).

McCrory's extraordinarily late motion weighs heavily against finding

that there is a "fair and just reason" for him to withdraw his guilty plea.

## D.    McCrory's Receipt of the Close Assistance of Counsel

For the first time, McCrory asserts that the counsel that assisted him,

from before the date of his indictment, through the entry of his guilty plea,

and until the presentence investigation report was finalized, did not

provide close assistance. Dkt. No. 92, at 6. In particular, McCrory avers

that his former counsel did not perform a "careful review" of relevant

financial records.[5] *Id*. McCrory also asserts that his former counsel

---

[5] McCrory later tempers this statement, opining that it is "highly improbable"
that his counsel performed this task. Dkt. No. 92, at 6.

"fail[ed] to review and discuss . . . all the discovery materials" with him and that his counsel did not put "proper safeguards in place to protect [McCrory] against . . . the federal government." *Id*. McCrory makes these claims—for the first time—nearly one year after retaining new counsel and nearly two years after pleading guilty.

"Determining whether a defendant received close assistance of counsel requires a fact-intensive inquiry." *United States v. McKnight*, 570 F.3d 641, 646 (5th Cir. 2009). For example, a defendant was held to have received close assistance where his counsel (1) advised him of the weight of the evidence, his available options, and his Constitutional and legal rights; (2) informed him that cooperating with the government would make him eligible for a possible recommendation in the form of a U.S.S.G § 5K1.1 letter, if his cooperation was productive and completely truthful; (3) told him that only an acceptance of responsibility would earn him a three-point Sentencing Guidelines reduction; and (4) informed him that, if he chose to plead guilty, the government would not bill him as a habitual offender. *Id*. at 647. Counsel's assistance in *McKnight* was deemed "close" even though

counsel failed to inform the defendant that he would be subject to a career offender enhancement.  *Id.*[6]

Here, the facts demonstrate the close assistance of McCrory's prior counsel.  First, counsel recognized that the volume of discovery was large and reacted accordingly:  seeking and securing a continuance to allow him "the time required to review the tremendous volume of discovery" and "to adequately prepare his response to the Government's charges."  Dkt. No. 26, at 1.  Contrary to McCrory's recent allegations, this demonstrates that

---

[6] *See also United States v. Carr*, 740 F.2d at 342-45 (holding that the defendant's attorney closely assisted the defendant by (1) informing him of potential conflicts with representation, (2) negotiating a favorable plea agreement with the government, and (3) questioning the defendant about his reliance on the advice of previously retained counsel with regards to tax matters); *United States v. Benavides*, 793 F.2d 612, 613-18 (5th Cir. 1986) (concluding that the defendant's attorney closely assisted the defendant by (1) filing several motions in the case, including a motion to suppress and several motions for continuance; (2) negotiating a plea agreement; and (3) alerting the defendant and the court when a conflict arose); *United States v. Hurtado*, 846 F.2d 995, 997 (5th Cir. 1988) (affirming the district court's denial of a motion to withdraw the defendant's guilty plea when (1) the defendant testified that his attorney discussed all possible defenses with the defendant and that he was satisfied with his counsel's advice, and (2) the district court noted its personal knowledge of defense counsel's integrity when the defendant alleged that his counsel improperly pressured him to accept a guilty plea); *United States v. Morris*, 85 Fed. App'x 373, 374 (5th Cir. 2003) (holding that a defendant received the close assistance of counsel when the defendant previously stated that counsel discussed the entire case with the defendant).

McCrory's counsel sought time to diligently review the discovery to fully

inform himself of the case against McCrory.

Moreover, when this Court asked McCrory whether he was satisfied

with the time and quality of advice that his retained counsel had given

him, McCrory assured the Court that he was satisfied in all respects:

> COURT: Have you had enough time to discuss your case with your lawyer?
>
> McCRORY: Yes, sir.
>
> COURT: Are you satisfied with the amount of time he's spent with you?
>
> McCRORY: I am.
>
> COURT: Are you satisfied with his advice to you?
>
> McCRORY: Yes, sir.
>
> COURT: If you have any complaints about the way he has handled your case, you need to tell me now. Do you have any complaint about the way he has handled your case?
>
> McCRORY: No, sir.

Dkt. No. 95, at 7-8. McCrory's statements of his complete satisfaction of the

time and attention that his counsel gave to this case were made under oath

at his plea hearing.  As such, they are entitled to "a strong presumption of verity." *United States v. Palmer*, 456 F.3d 484, 491 (5th Cir. 2006).

Moreover, McCrory's counsel actively participated in the plea negotiations.  The parties informed the Court that McCrory and the government had been reviewing and revising the plea agreement, plea supplement, and agreed preliminary order of forfeiture for at least two weeks before the guilty plea hearing.  Dkt. No. 95, at 33-34.  As McCrory's counsel explained to this Court regarding these documents:  "There have been many iterations between February 12th and now." *Id*. at 34.  McCrory clarified that he and his counsel reviewed the final drafts of the documents the morning of the plea hearing.  *Id*.  He and his counsel assured the Court that they had adequate time to review the documents.  *Id*. at 34-36.  McCrory's counsel confirmed that he reviewed the documents with McCrory and answered all of his questions.  *Id*.  McCrory agreed.  *Id*.

Moreover, McCrory informed the Court that he and his counsel had reviewed the declarations at the end of both the plea agreement and plea supplement.  *Id*. at 36.  He stated that he agreed with the declarations and

had no questions concerning them. *Id*. at 36-37. Those declarations, which

McCrory understood and to which he assented, stated that, *inter alia*, the

plea agreement and plea supplement had been "explained to defendant by

defendant's attorney" and "understood by defendant." Dkt. No. 32.[7]

Contrary to McCrory's assertions in his motion to withdraw his

guilty plea, McCrory not only had close assistance of counsel but he also

benefitted from the close assistance of highly effective counsel during

review of the discovery in this case; while negotiating the plea agreement,

plea supplement, and preliminary order of forfeiture in this case; and prior

to and during the entry of his guilty plea.

Even assuming that McCrory's former counsel erred in estimating

some aspect of McCrory's potential sentence, such error is insufficient to

warrant the withdrawal of McCrory's plea. *See United States v. McKnight*,

570 F.3d 641, 647 (5th Cir. 2009) (concluding that counsel's assistance was

"close" even though counsel failed to inform the defendant that he would

be subject to a career offender enhancement); *United States v. Rosales*, 281

---

[7] The plea supplement was filed under seal.

Fed. App'x 424, 425 (5th Cir. 2008) (holding that a defendant failed to show that he was deprived of the close assistance of counsel even though the defendant successfully demonstrated that his counsel's opinion as to the defendant's potential sentence proved to be incorrect).

Moreover, this Court repeatedly informed McCrory that the Court, and the Court alone, will determine McCrory's sentence in this case. Dkt. No. 95, at 31-32; *see also id*. at 37-38. McCrory assured the Court that he understood the maximum penalties and the fact that the Court alone would determine his punishment. *Id*.

McCrory's attempt to withdraw his plea—filed only after his pre-sentence report was finalized—suggests that McCrory is attempting to avoid the consequences of what he now believes was a poor decision to plead guilty. This is something McCrory cannot do. *See United States v. Carr*, 740 F.2d 339, 345 (5th Cir. 1984) (noting that a defendant cannot "make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty").

McCrory's late assertions that his former counsel failed to provide close assistance is contradicted by McCrory's earlier sworn statements, the statements of his able counsel, and the record as a whole. This factor weighs against finding that there is a "fair and just reason" for allowing McCrory to withdraw his guilty plea.

## E. Prejudice to the Government

After describing this case as "one of the largest, most complex criminal cases prosecuted in this district in many years," Dkt. No. 92, at 15, McCrory boldly asserts that the government would not be prejudiced by having to try him for the fifteen charges alleged in the indictment. *Id*. at 17. Not so.

Over two years have elapsed since the indictment was filed. For some witnesses the relevant conduct occurred in 2008, over eight years ago. As McCrory stated, this is a complex bribery and money laundering case, with the potential for hundreds of exhibits and dozens of witnesses. His co-defendant has pled guilty. Without a doubt, the government would be prejudiced by preparing for trial on a fifteen-count indictment more than

two years after McCrory pled guilty. *See United States v. Lampaziane*, 251 F.3d 519, 525 (5th Cir. 2001) (finding prejudice against the government under similar circumstances).

Moreover, even if the government were not prejudiced by proceeding to trial at this late date, "the absence of a showing of prejudice to the government, by itself, [is not] sufficient to mandate permission to withdraw a plea." *United States v. Carr*, 740 F.2d 339, 345 (5th Cir. 1984); *United States v. McKnight*, 570 F.3d 641, 649 (5th Cir. 2009) (reaffirming the principle announced by the Fifth Circuit in *Carr*).

Because the government would be prejudiced by allowing McCrory to withdraw his guilty plea at this late date, this factor weighs against granting his motion.

**F.     Inconvenience to the Court & Waste of Judicial Resources**

After pleading guilty in February 2015 and waiting until just a few days before his sentencing, McCrory has substantially inconvenienced the Court.  Granting his motion to withdraw his guilty plea would require starting anew, proceeding to trial, and redoing the presentence

investigation report.  This would create a significant waste of judicial resources, disrupt the trial docket, and inconvenience the Court.  *See United States v. Grant*, 117 F.3d 788, (5th Cir. 1997) ("By the day of sentencing, the court had reviewed the presentence report, voluminous objections, responses to those objections, and various materials submitted by [the defendant].  Plea withdrawal would have disrupted the trial docket, inconveniencing the court and wasting additional judicial resources."); *Carr*, 740 F.2d at 345 ("Rescheduling [a two to three week] trial would have inconvenienced the trial court by disrupting its docket."); *United States v. Adams*, 275 Fed. App'x 298 (5th Cir. 2008) ("By the time the motion was filed, the PSR had been prepared and withdrawing the plea would have disrupted the trial docket and inconvenienced the court.").

McCrory has offered no argument or evidence to show that granting of his motion would not inconvenience the Court substantially or waste judicial resources.  These factors weigh against finding that there is a "fair and just reason" for allowing McCrory to withdraw his guilty plea.

## IV. Conclusion

McCrory has not met his burden of presenting a credible reason that makes the withdrawal of his plea "fair and just." Consequently, his motion should be denied, and he should be sentenced promptly.

Respectfully submitted,

HAROLD H. BRITTAIN
*First Assistant United States Attorney for the Southern District of Mississippi*

DARREN J. LAMARCA
Mississippi Bar Number 1782
*Assistant United States Attorney*

By: /s/ *Jennifer Case*

JENNIFER CASE
Mississippi Bar Number 104238
*Assistant United States Attorney*
501 E. Court Street, Suite 4.430
Jackson, Mississippi 39201

Dated: December 19, 2016     (601) 965-4480

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I electronically filed the foregoing

with the Clerk of the Court using the Electronic Case Filing system (ECF),

which served to send notification of this filing to counsel of record.

Dated: December 19, 2016

/s/ *Jennifer Case*
_____
JENNIFER CASE
*Assistant United States Attorney*